**Raymond J. DONOVAN, Secretary of Labor, Plaintiff,**

v.

**William J. NELLIS, et al., Defendants.**

**William J. NELLIS, et al., Defendants and Third-Party Plaintiffs,**

v.

**F. Ray MARSHALL, et al., Third-Party Defendants.**

**No. MCA 81–0245.**

United States District Court, N. D. Florida, Panama City Division.

Dec. 15, 1981.

David H. Feldman, Bruce Rinaldi, Richard O. Patterson, Arthur R. Goldberg, Special Litigation Staff, Dept. of Labor, Washington, D.C., for plaintiff.

Rowlett W. Bryant, Panama City, Fla., and Dennis J. Horan, Robert E. Nord, George W. Spellmire, Chicago, Ill., for defendants Guild and Wolfberg.

Edward J. Egan, Chicago, Ill., for defendants Shannon and Hank.

**540**

Thomas J. Duffey, Milwaukee, Wis., for defendant Thomas F. O'Malley.

Benjamin W. Redding, Panama City, Fla., for defendant Clinton E. Foster.

Samuel J. Powers, Jr., Miami, Fla., for defendants Nellis, Coghlan, Magee and Yarbrough.

Kenneth G. Anderson, Jacksonville, Fla., for defendant Earl N. Hoekenga.

Robert R. Feagin, Jr., Tallahassee, Fla., for defendant James Green.

Robert M. Ervin, Wilfred C. Varn, Tallahassee, Fla., and Neil K. Quinn, Chicago, Ill., for defendants Baker, McDougall, Yates, Robbins, and Winstead.

## ORDER OF SUMMARY JUDGMENT

HIGBY, District Judge.

The above-styled case is before the court to consider defendant Clinton E. Foster's motion for summary judgment. For the reasons developed below, the court finds that there is no genuine issue as to any material fact and that Foster is entitled to the entry of summary judgment in his favor as a matter of law.

On August 18, 1981, Raymond J. Donovan, Secretary, Department of Labor, filed the instant suit against seven present and former trustees of the Central States, Southeast and Southwest Areas Pension Fund and ten other individual defendants who were alleged to have also acted as fiduciaries[1] with respect to the Pension Fund. In his complaint the Secretary alleged that the defendants had breached the fiduciary obligations imposed upon them by Section 404(a)(1) and Section 405(a) and (b) of the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1104(a)(1) and § 1105(a) and (b).[2] The

---

1. A fiduciary is defined by ERISA § 3, 29 U.S.C. § 1002(21), which provides:

(A) Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

(B) If any money or other property of any employee benefit plan is invested in securities issued by an investment company registered under the Investment Company Act of 1940, such investment shall not by itself cause such investment company or such investment company's investment adviser or principal underwriter to be deemed to be a fiduciary or a party in interest as those terms are defined in this subchapter, except insofar as such investment company or its investment adviser or principal underwriter acts in connection with an employee benefit plan covering employees of the investment company, the investment adviser, or its principal underwriter. Nothing contained in this subparagraph shall limit the duties imposed on such investment company, investment adviser, or principal underwriter by any other law.

2. For the relevant dates involving this case, ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), provided:

Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter.

ERISA § 405(a) and (b), 29 U.S.C. § 1105(a) and (b), provides:

(a) In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

(1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

defendants were alleged to have violated their fiduciary duties in regard to the manner in which the Pension Fund had acquired a parcel of real estate at a foreclosure sale in Bay County, Florida, in September 1977. As a result, the Secretary alleged, the Pension Fund had incurred financial losses, and the defendants are liable to the Fund for those losses under ERISA Section 409, 29 U.S.C. § 1109.[3]

By way of answering the Secretary's complaint, defendant Foster filed a motion for summary judgment on September 8, 1981. The Secretary then filed a memorandum of law in opposition to Foster's motion. The gravamen of the Secretary's position was that a proper response to Foster's motion could not be developed because opposing evidentiary affidavits were unavailable. To support his position the Secretary filed the affidavit of Morton Klevan, Deputy Administrator for Pension and Welfare Benefit Programs Office in the Labor Management Services Administration, Department of Labor, who represented that the Secretary was currently unable to present facts justifying his opposition. Pursuant to Rule 56(f)[4] of the Federal Rules of Civil Procedure, the Secretary requested in his memorandum of law that Foster's motion be denied, or consideration of it be deferred until discovery was completed. In view of these parties' contentions, the court held a hearing on September 23, 1981, to consider the questions raised by the Secretary and Foster with respect to Foster's motion for summary judgment.

At that hearing the Secretary renewed his claim that he was unable to present proper affidavits in opposition to Foster's summary judgment motion. The Secretary's counsel indicated that he wanted to depose Nathan Wolfberg, another defendant in this case, regarding Foster's role in the foreclosure sale. Counsel also repre-

---

(2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

(b)(1) Except as otherwise provided in subsection (d) of this section and in section 1103(a)(1) and (2) of this title, if the assets of a plan are held by two or more trustees—

(A) each shall use reasonable care to prevent a co-trustee from committing a breach; and

(B) they shall jointly manage and control the assets of the plan, except that nothing in this subparagraph (B) shall preclude any agreement, authorized by the trust instrument, allocating specific responsibilities, obligations, or duties among trustees, in which event a trustee to whom certain responsibilities, obligations, or duties have not been allocated shall not be liable by reason of this subparagraph (B) either individually or as a trustee for any loss resulting to the plan arising from the acts or omissions on the part of another trustee to whom such responsibilities, obligations, or duties have been allocated.

(2) Nothing in this subsection shall limit any liability that a fiduciary may have under subsection (a) of this section or any other provision of this part.

(3)(A) In the case of a plan the assets of which are held in more than one trust, a trustee shall not be liable under paragraph (1) except with respect to an act or omission of a trustee of a trust of which he is a trustee.

(B) No trustee shall be liable under this subsection for following instructions referred to in section 1103(a)(1) of this title.

3. ERISA § 409, 29 U.S.C. § 1109, provides:

(a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

(b) No fiduciary shall be liable with respect to a breach of fiduciary duty under this subchapter if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary.

4. Rule 56(f) provides:

Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

sented that he wanted opportunities to inquire about the genuineness of the competitive bids at the foreclosure sale and to present opposing affidavits regarding the reasonableness and prudence of Foster's bidding at the foreclosure sale in light of ERISA's fiduciary standards. The court granted the Secretary an additional 60 days to depose Wolfberg and an additional 30 days to prepare affidavits regarding the other issues.

Following the hearing, the Secretary filed a supplemental memorandum of law in opposition to defendant Foster's summary judgment motion. The Secretary has not submitted Wolfberg's deposition. Nor has the Secretary filed any affidavits regarding the degree of prudence Foster was obliged to exercise under ERISA or the genuineness of the competitive bids. It is in this context that the threshold question of whether the Secretary may seek the shelter of Rule 56(f) is considered.

██ Federal Civil Procedure Rule 56(f) is designed to be a shelter against the precipitous entry of summary judgments. The rule gives the court discretion to deny or defer the entry of summary judgment when the non-movant is unable to provide opposing affidavits. In the typical situation Rule 56(f) is applied where the opposing party is unable to justify his opposition because knowledge of the relevant facts is exclusively with or largely within the control of the moving party. Under the rule the non-movant is expected to present an affidavit showing that knowledge of the facts is outside the control of the non-movant and describing his unsuccessful attempts to obtain those facts. These two requisites must be met to invoke application of Rule 56(f).

In the instant case the Secretary has satisfied neither requisite. Knowledge of the facts underlying this case is not exclusively or largely within the control of Foster, the moving party. Knowledge of the facts of this case is not outside of the Secretary's *control*. The Secretary has had the ability to elicit the relevant facts. From the hearing held on this motion, there appeared to be three discovery areas which the Secretary wanted to explore. First, the Secretary wanted to depose Wolfberg to examine Foster's role in the foreclosure. Second, the Secretary wanted to present an expert opinion regarding the prudence of Foster's conduct in light of ERISA's fiduciary standard. Third, the Secretary desired to inquire about the genuineness of the competitive bids at the foreclosure sale. With reference to all of these matters, the Secretary has as much ability to elicit the facts as Foster. Wolfberg is a defendant in this case, and according to the Secretary's counsel at the hearing on the instant motion, Wolfberg was available for deposition. Expert opinions regarding the prudence or imprudence of Foster's conduct under ERISA's fiduciary standards are equally available to the parties. Finally, the names of the two persons who are believed to have been the competitive bidders at the foreclosure sale were available to the Secretary. Under these circumstances it cannot be fairly said that knowledge of the facts underlying this case are outside the control of the Secretary. The Secretary has not met the first requisite to the application of Rule 56(f).

Nor has the Secretary met the rule's second requisite, that of stating with particularity the non-movant's unsuccessful attempts to develop controverting affidavits. In his pre-hearing response to Foster's motion, the Secretary made generalized representations that he was unable to develop opposing affidavits. Whatever the merits of the Secretary's position prior to the hearing on the instant motion, the Secretary's position is undermined by the fact that the court permitted extensions of time to pursue discovery which would enable the Secretary to develop opposing affidavits. Following those extensions the Secretary has made no particularized representations that his discovery efforts have been thwarted. No further opposing affidavits have been filed. Since Rule 56(f) contemplates that the non-movant be able to present particularized reasons why he has been frustrated in his discovery attempts, the Secretary has

not met the second requisite to Rule 56(f)'s application.[5]

■ Since neither requisite has been met, the Secretary's claim to the shelter of Rule 56(f) is appropriately rejected.[6] Having resolved this threshold issue, I review the merits of Foster's motion for summary judgment.

■ Federal Rule of Civil Procedure 56 permits a party to move for judgment on a claim as to which there is no genuine issue of material fact and upon which the movant is entitled to prevail as a matter of law.[7]

**5.** *In Securities & Exchange Commission v. Spence & Green*, 612 F.2d 896, 901 (5th Cir. 1980), Judge Reavley stated for the court:

> Because the burden on a party resisting summary judgment is not a heavy one, one must conclusively justify his entitlement to the shelter of rule 56(f) by presenting specific facts explaining the inability to make a substantive response as required by rule 56(e) and by specifically demonstrating 'how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.' The nonmovant may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts, particularly where, as here, ample time and opportunities for discovery have already lapsed.

(Citations omitted). In *Spence & Green*, the SEC moved for summary judgment. Nearly three years later defendant Spence's only response was a motion for an extension of time to reply to the summary judgment motion. While the period in the instant case is considerably briefer, the hearing on Foster's motion fully defined the discovery areas which the Secretary wanted to explore. The Secretary has not claimed that he has been thwarted in his discovery efforts. Rule 56(f) does not aid a nondiligent party. In addition to counsel's representation that Wolfberg was available, the court notes that, with regard to another motion filed in this action, Wolfberg has filed an affidavit describing, among other matters, Foster's role in the foreclosure sale. From the record of this case, Wolfberg appears to have been available to be deposed.

**6.** The facts of the instant case are not analogous to the facts underlying the decision in *Alabama Farm Bureau Mutual Casualty Co., Inc. v. American Fidelity Life Insurance Co.*, 606 F.2d 602 (5th Cir. 1980). In that case the district court entered an order of summary judgment. Part of the summary judgment was vacated by the court of appeals because the plaintiff's attempts to exercise its discovery rights were largely thwarted by the defendants. In the instant case, the Secretary's attempts to pursue discovery have not been frustrated by Foster or, apparently, any of the defendants. Moreover, as indicated above, it does not appear that, with the exception of seeking defendant Wolfberg's deposition, the discovery which the Secretary wanted to pursue could be thwarted by Foster or any of the defendants.

**7.** Rule 56 provides:

(a) For Claimant. A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof.

(b) For Defending Party. A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof.

(c) Motion and Proceedings Thereon. The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

(d) Case Not Fully Adjudicated on Motion. If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be concluded accordingly.

(e) Form of Affidavits; Further Testimony; Defense Required. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirma-

The purpose of summary judgment is not to resolve factual issues.[8] Whenever there is a genuine issue of disputed, material fact, a motion for summary judgment should be denied. In addition to establishing that there is no disputed, material fact, the moving party must establish that he is entitled to judgment as a matter of law. Unless the movant carries both of these burdens, he is not entitled to the entry of summary judgment.[9]

In his supplemental memorandum of law, the Secretary has maintained that Foster cannot carry these burdens because Foster's conduct under ERISA's fiduciary standard is a "mixed question of law and fact." Such mixed questions, the Secretary has contended, are not susceptible to determination upon a motion for summary judgment. The Secretary's contention misconstrues Rule 56. The rule provides: "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." [10] The rule contemplates a two-tier analysis. First, the court must determine whether there is any genuine issue as to any material fact.

Second, the court must decide whether, upon the undisputed, material facts, the movant is entitled to judgment as a matter of law. Because both tiers of the analysis are determinable in the instant case, the Secretary's contention that Foster's motion is not susceptible to determination is rejected also.

With respect to the first tier of the analysis, there is no genuine factual dispute regarding Foster's conduct. From review of the complaint's allegations, including those admitted by Foster for the purposes of the instant motion, the affidavits submitted in regard to this motion, other affidavits, including defendant Wolfberg's, filed in regard to another pending motion, and the parties' representations at the hearing, the following undisputed, material facts appear:

In June 1977, Nathan Wolfberg, an attorney representing the Trustees of the Central States, Southeast and Southwest Areas, Pension Fund, engaged attorney Clinton E. Foster to represent the fund in a foreclosure proceeding. The foreclosure was the result of defaults by the principal and guarantors on loans totaling $7,000,000.00 which had been made by the pension plan in 1974. Foster represented the Pension Fund at the foreclosure trial. On August 19, 1977, the

---

tively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him. (f) When Affidavits are Unavailable. Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

(g) Affidavits Made in Bad Faith. Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused him to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt.

**8.** *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Benton Volvo-Metairie, Inc. v. Volvo Southwest, Inc.*, 479 F.2d 135 (5th Cir. 1973).

**9.** *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *United States Steel Corporation v. Darby*, 516 F.2d 961, 963 (5th Cir. 1957).

**10.** Rule 56(c).

Circuit Court for the Fourteenth Judicial Circuit of the State of Florida entered a final judgment of foreclosure against Indico Corporation, the principal obligor on the debt, in the amount of $9,615,422.26.

Following the entry of the foreclosure judgment, Foster telephoned Wolfberg to advise him that the judgment obtained in favor of the Pension Fund had not been satisfied and the property would be sold at judicial sale in Panama City, Florida, on September 7, 1977. During this conversation, the two attorneys discussed strategies of obtaining title to the property while maximizing the possible deficiency judgment which could be obtained against Indico Corporation. Foster advised Wolfberg that the judicial procedure in Bay County, Florida, provides that anyone may bid at a judicial sale, but if the judgment creditor acquires the land, then the court must determine the property's value which will be used to offset the judgment held by the creditor. Foster further advised that the difference between the property's value, as determined by the court, and the judgment could be pursued as a deficiency against the principal and guarantors of the loans.

The substance of the further conversation is reported in Wolfberg's affidavit at paragraph 12:

As a matter of litigation strategy and in order to optimize the Pension Plan's recovery on the judgment which it held, Mr. Foster and I discussed the importance of obtaining title to the Pinnacle Port property while maximizing the possible deficiency judgment which could be obtained against Indico Corp., and which could then be used to pursue the guarantors of the loan to Indico Corp. Mr. Foster explained that on the basis of his experience and the comments of Judge Fitzpatrick [the presiding judge at the foreclosure trial], if the Pension Plan were to 'bid in' only a small amount of its judgment against Indico Corp., it was very likely the court would proceed to set a much higher value on the property in the context of the deficiency proceeding, and could result in a very low deficiency judg-

ment. It was his recommendation that the Pension Fund 'bid in' a reasonable portion of its judgment in order to obtain title to the property. By such action it was much more probable that the court would thereafter grant a deficiency judgment in the amount of the difference between the Pension Plan's judgment, and the amount of the Pension Plan's bid, rather than attribute a different, and higher value to the property. As a result of those discussions, Mr. Foster suggested that if the Pension Plan were to bid in $5 million of its $9.5 million judgment to obtain title to the property, he believed the court would recognize a bid in that amount as a fair bid and would thereafter be more likely to enter a deficiency judgment for the difference.

Defendant Foster's suggestion of $5,000,-000 as an opening bid was based upon three factors: First, the size of the judgment. Second, the above-described legal consequences of making an inadequate bid. Third, two appraisals of the realty's value which had been turned over to Foster by L. Charles Hilton, an attorney previously handling the foreclosure. One appraisal valued the property at $2,300,000. The other appraisal opined that the property was worth $10,000,000.

On August 23, 1977, defendant Foster wrote Wolfberg the following letter:

Enclosed herewith is a copy of the Final Judgment of foreclosure entered in the captioned matter together with a copy of the Notice of Foreclosure Sale. As you know, this sale is scheduled for September 7, 1977. It will not be necessary that you or anyone from the Fund be present at that sale if you provide me with appropriate written instructions for bidding on behalf of the Fund.

I point out for informational purposes only, the following factors which you may want to take into consideration in deciding at what price the Fund will bid on the property. In order to record the Certificate of Title issued by the Clerk at the foreclosure sale, the Fund would have to pay State Documentary Stamps and Sur-

Tax based upon the amount of it's [sic] bid. The State Documentary Stamps tax is $.30 per $100.00, or fraction thereof, and the Sur-Tax is $.55 per $500.00, or fraction thereof. For example, the Documentary Stamps tax of a bid of $4,000,000.00 would be $12,000.00, and the Documentary Stamps tax on a bid of $5,000,000.00 would be $15,000.00. Likewise, the Sur-Tax on a bid of $4,000,000.00 would be $4,400, and it would be $5,500 on a bid of $5,000,000.00.

In addition, the amount of the bid will probably be a factor used by the Bay County Tax Accessor [sic] in valuing this property for tax purposes for the year 1978.

No written instructions for bidding at the foreclosure sale were received by Foster. On September 6, 1977, Wolfberg called Foster and instructed him that he was to begin bidding by "bidding in" $5,000,000 and continue bidding, if competing bids were made, up to a maximum of $7,000,000.

The following day, September 7, 1977, the foreclosure sale was held. Foster attended the sale on behalf of the Pension Fund. Two other bidders also attended the sale. Foster opened the bidding with the Pension Fund's initial bid of $5,000,000. Competitive bids, in $100,000 increments, were made by the other two bidders until Foster's final successful bid of $6,700,000 was made on behalf of the Pension Fund.

At the conclusion of the sale, Foster secured the names of the two other bidders. Foster then telephoned Wolfberg's office to advise that the Pension Fund had been the successful bidder at $6,700,000. The names of the two other bidders, together with certain other information regarding local taxes, were sent by Foster's letter to Wolfberg on September 7, 1977.

Other than these described activities in connection with the foreclosure proceeding, Foster has had no relationship, association or contact with the Central States, Southeast and Southwest Area Pension Fund or anyone acting on its behalf. Foster has been a licensed attorney having a substantial portion of his practice devoted to real estate work. Foster has not been, nor has he ever held himself out to be, a real estate appraiser, financial consultant, or financial adviser to the Pension Fund or anyone else.

Because these facts are undisputed and are sufficient to provide a basis for the court's judgment, Foster has carried his first tier burden, that of demonstrating that there is no genuine factual dispute. As former Chief Judge Brown stated for the court of appeals in *Bruce Construction Corp. v. United States*, 242 F.2d 873, 875 (5th Cir. 1957), "[w]hen a movant makes out a convincing showing that genuine issues of fact are lacking, we require that the adversary adequately demonstrate by receivable facts that a real, not formal, controversy exists . . . ." Having pierced the pleadings, there is no genuine factual dispute regarding Foster's conduct in this case.

■ With respect to his second tier burden, that of demonstrating that he is entitled to judgment as a matter of law, Foster has made two contentions. First, he contends that he was not a fiduciary with respect to the Pension Fund within the meaning of ERISA § 3, 29 U.S.C. § 1002(21). Second, Foster claims that, even assuming he was a fiduciary with respect to the Pension Fund, he did not breach the fiduciary duties imposed upon him by ERISA § 404 and § 405, 29 U.S.C. § 1104 and § 1105. Consideration of Foster's first contention is unnecessary because I find that, assuming he was a fiduciary with respect to the Fund, Foster did not breach any of the duties imposed upon a fiduciary by ERISA. Those duties are extensive.

Under ERISA § 404, 29 U.S.C. § 1104, a fiduciary is obliged to discharge his duties for the dual, exclusive purposes of providing benefits to the beneficiaries and defraying reasonable expenses of the plan's administration. Further, the fiduciary must discharge his duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an

enterprise of a like character and with like aims . . . ." [11] Finally, the fiduciary is required to perform his duties in accordance with the documents and instruments governing the plan insofar as they are consistent with ERISA's provisions. In addition to these duties under section 404, there are other fiduciary obligations.

Under ERISA § 405, 29 U.S.C. § 1105, a fiduciary is liable for the breach of fiduciary responsibility of another fiduciary in three circumstances: First, a fiduciary is liable whenever he "participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach." [12] Second, if the fiduciary's failure to comply with his specific responsibilities under section 404 causes another fiduciary to breach his duty, then the fiduciary is liable for the other's breach. Third, if a fiduciary has knowledge of another fiduciary's breach, then the fiduciary is liable for the other's breach unless the fiduciary "makes reasonable efforts under the circumstances to remedy the breach." [13] Additionally, with respect to trustee fiduciaries, they are charged to use reasonable care to prevent a co-trustee from committing a breach.

It is with respect to these statutory obligations of fiduciary care that the Secretary alleged defendant Foster's violations. The Secretary contends in his memoranda that in three respects Foster has breached his duties. The Secretary first alleges that Foster's suggestion of an opening bid of $5,000,000 for the land at the foreclosure sale was a breach. According to the Secretary's allegations, Foster was imprudent to make the suggestion because the land was worth considerably less than $5,000,000. Next, the Secretary alleges that Foster was imprudent to continue the competitive bidding until the $6,700,000 successful bid. Again, the basis of the Secretary's claim is that the land was not worth the price of the successful competitive bid. Finally, the Secretary claims that Foster was imprudent

in bidding in $100,000 increments. The $100,000 increment, the Secretary maintains, was an excessive bidding increment which "resulted in an increased loss to the Fund of almost $100,000." Testing these contentions against ERISA's fiduciary standards and placing the burden of persuasion upon the movant Foster, I find that Foster has not breached ERISA's fiduciary duties.

Regarding Foster's suggestion of an opening bid of $5,000,000, it is important to be mindful of the fact that Foster made this suggestion in the context of a foreclosure sale. The final judgment of foreclosure against the debtor Indico Corporation was $9,615,422.26. Foster knew that if the circuit court regarded the Pension Fund's bid as unrealistically low, the court would not enter a deficiency judgment for the difference. Foster also had two property appraisals, which placed the property's value at $2,300,000 or $10,000,000. Foster's advice to Wolfberg was nothing more than a suggestion. The letter from Foster to Wolfberg on August 23, 1977, points out the local tax consequences of a successful $4,000,000 as well as $5,000,000 bid. And, although retrospectively it may appear to have been imprudent, the Pension Fund itself had lent a total of $7,000,000 to the debtor Indico Corporation with the land as collateral for the loans. Foster's role was limited: he was hired to represent the Pension Fund as an attorney. Predicated upon the legal consequences of making too low a bid, Foster's suggestion was advice to a client who, in the ordinary course of events, could be expected to evaluate the financial as well as legal consequences of the suggestion.

Moreover, once competitive bids in excess of $5,000,000 were received at the foreclosure sale, Foster's suggestion of an opening bid appears even more reasonable. That there were competitive bids in excess of $5,000,000 belies the claim that the $5,000,-000 amount was imprudent. When the best evidence of value is the price property commands at market, the fact that two other

---

11. ERISA § 404, 29 U.S.C. § 1104.

12. ERISA § 405, 29 U.S.C. § 1105.

13. *Id.*

bidders made competitive bids in excess of $5,000,000 compels the conclusion that Foster's suggestion was reasonable.

Nor can Foster be regarded as imprudent for continuing to bid until the Fund's successful $6,700,000 bid. Foster was under a fiduciary duty to obey the instructions that he had received from Nathan Wolfberg. Those instructions were mandatory, not discretionary. Had he tried, Joseph Heller couldn't have provided a better scenario for Foster. Committing legal malpractice cannot be regarded as being prudent. If Foster had disobeyed those instructions, he would have breached his professional responsibility as an attorney. Disciplinary Rule 7–101(A) provides that "[a] lawyer shall not intentionally (1) [f]ail to seek the lawful objectives of his client ...." [14] The same disciplinary rule further states that a lawyer shall not intentionally "[f]ail to carry out a contract of employment entered into with a client for professional services ...." In the circumstances of the foreclosure sale, Foster was obliged to follow his client's instructions to continue to bid the price upwards to $7,000,000.

Finally, although his instructions did not provide for a bid increment, Foster's bidding in $100,000 increments was not imprudent. The foreclosure sale was upon property worth millions of dollars. A bidding increment of $100,000 was exactly two percent of the Pension Fund's opening bid of $5,000,000. One hundred thousand dollars was approximately one and a half percent of the final successful bid of $6,700,000. Ignoring for the moment the specifics of the instant foreclosure sale, a $100,000 bidding increment would be but five percent of a $2,000,000 price and four percent of a $2,500,000 price. Bidding increments of one to five percent of value at an auction of property are entirely reasonable. Foster's bidding in $100,000 increments was well within those percentages that are regarded as prudent.

In these circumstances, Foster's suggestion of an opening bid, his obedience to his bidding instructions, and his bidding increments were prudent. Foster exercised "the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." Foster discharged his duties solely in the interests of the Pension Fund's participants and beneficiaries. Foster breached none of the fiduciary duties imposed upon him by ERISA § 404, 29 U.S.C. § 1104.

Nor has Foster breached any of the fiduciary duties imposed by ERISA § 405, 29 U.S.C. § 1105. None of the described statutory situations under subsection (a) is applicable to Foster's conduct in this case. Subsection (b) is inappropriate because Foster has never served as a trustee of the Pension Fund.

Accordingly, my judgment is that Clinton E. Foster acted in all respects prudently regarding his role in this case, that he breached none of the fiduciary duties imposed upon him by ERISA, and that he is entitled to judgment as a matter of law.

ORDERED that judgment for the defendant Clinton E. Foster is hereby entered.

---

**14.** Code of Professional Responsibility as adopted by the Supreme Court of the State of Florida, 235 So.2d 723 (1970).