**SECURITIES AND EXCHANGE COMMISSION, Plaintiff-Appellee,**

v.

**SPENCE & GREEN CHEMICAL COMPANY and Andrew Spence, Sr., Defendants-Appellants.**

Nos. 76–4017, 77–1362, 77–2600 and 77–3173.

United States Court of Appeals, Fifth Circuit.

Feb. 27, 1980.

Paul Gonsan, Atty., Securities & Exchange Commission, Washington, D. C., for plaintiff-appellee in no. 77–1325.

Lawrence J. Cohen, Chicago, Ill., for defendants-appellants.

Lynn N. Hughes, Houston, Tex., Trumbull Asphalt Div., Owens-Corning Fiberglas Corp., amicus curiae.

David Ferber, Sol., James H. Schropp, Asst. Gen. Counsel, Julie Allecta, Atty., Securities & Exchange Commission, Washington, D. C., for plaintiff-appellee.

Before MORGAN, REAVLEY and HATCHETT, Circuit Judges.

REAVLEY, Circuit Judge:

Appellee, Securities and Exchange Commission (SEC), commenced this injunctive action against Spence and Green Chemical Company and two of its principal shareholders, Andrew Spence and James I. Farmer, alleging violations of registration and antifraud provisions of the Securities Act of 1933 (sections 5(a), (c) and 17(a)), 15 U.S.C. §§ 77e(a), (c) and 77q(a), and of the antifraud provisions of the Securities Exchange Act of 1934 and regulations promulgated thereunder (section 10(b) and rule 10b–5), 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b–5. Both Farmer and the company accepted consent judgments. The district court entered summary judgment against Spence. The court enjoined each defendant from further engaging in activities violating the registration and antifraud provisions of the federal securities laws. Spence, alone, presses this consolidated appeal from four adverse rulings handed down during the course of the litigation: (1) the order of November 22, 1976, granting summary judgment against Spence individually, (2) the order of September 13, 1976, entering judgment against the company based on the consent decree executed by its court-appointed receiver, (3) the order of May 10, 1977 denying defendant's motions for recu-

sal of the trial judge and for reconsideration of the order of summary judgment against Spence, and (4) the order of August 17, 1977, denying a renewed motion for recusal and holding in abeyance, pending this appeal, Spence's motion to terminate the receivership. We agree with the bulk of the district court's decision and the entirety of its remedy and disposition, disagreeing only with that portion of the decision that found a violation of section 10(b) and rule 10b–5.

Andrew Spence, as founder, president, and controlling shareholder, has dominated Spence and Green Chemical Company ("Spence and Green" or "company") since its incorporation in 1956. The company, located in Crosby, Texas, was formed as a research and development concern to seek methods of converting low-grade industrial byproducts into commercially marketable commodities. Its undertakings in the recent past have broadened to include development of certain innovative petroleum refining techniques. Because of its overriding emphasis on research, the company had never shown a year-end profit from its inception to the beginning of this litigation. Despite this rather morbid financial background and the restricted and local nature of early sales of stock in the company, as of September 6, 1975, Spence and Green had issued about 1,586,000 shares of stock. Because of an active secondary market, these shares are now owned by over 800 stockholders, more than half of whom are not Texas residents.

In 1970 in order to raise capital for a particular project, Spence began preparations for the company to issue additional securities under the small offerings, exemption to the federal securities registration laws, 15 U.S.C. § 77c(b), and Regulation A thereunder, 17 C.F.R. §§ 230.251–64. Spence employed an independent accounting firm to produce certified financial statements, and he retained an attorney to furnish the accountants with an opinion as to the current legal status of the company. The attorney, after reviewing Spence and Green's records, advised Spence that certain past stock transactions could constitute vio-

lations of the securities laws and that the company faced substantial potential liability on those transactions. Spence, a chemical engineer, rejected this opinion, however, and declined to disclose it to the accounting firm, instead proffering his own opinion that all was in order and that no contingent liability existed. The accounting firm did not find all to be in order with Spence and Green's financial records, however, and withdrew after fifteen months, rendering no opinion as to the financial status of the company because of the inadequacy and confusion of its records. Undaunted, Spence arranged for Farmer, a director of the company who was a certified public accountant, to prepare the financial data required for the Regulation A offering.

In the spring of 1972 Spence then filed the required documents with the Ft. Worth regional office of the SEC, indicating an intent to offer 104,250 shares at $2.50 per share according to the provisions of Regulation A. The offering circular by which the shares would be marketed contained the financial statements prepared by Farmer, but did not disclose by whom they had been prepared, or that he was a director of the issuer. It also failed to disclose the negative opinions rendered by Spence's attorney and by the independent accounting firm. The SEC returned this filing on July 31, 1972, citing numerous deficiencies in the offering circular.

After several exchanges of correspondence with the SEC, Spence eventually withdrew the filing, but on October 31, 1972, attempted to market the shares by mail in the form of a subscription available only to Spence and Green shareholders. Accompanying the subscription offer were copies of the offering circular previously rejected by the SEC and the series of letters exchanged between Spence and the SEC. This correspondence, received by the offerees, included one letter in which Spence had predicted that within five years the stock in question would have a "value of *not* $2.50 per share, but $250.00 to $400.00 per share." Though this offer ostensibly was made only to Texas sharehold-

ers, the mailing also went to seventy-five brokers located throughout the country. Following this offering, the SEC permanently suspended any Regulation A exemption for Spence and Green after an administrative hearing (the transcript of which was considered by the court below and is part of the record on appeal). Nonetheless, on March 20, 1973, Spence again wrote, this time to all Spence and Green shareholders, seeking "private placement loan[s] with conversion privileges."

The SEC then filed this injunctive action on July 16, 1973. After Spence indicated an intent to issue further stock options to the company's creditors in the face of a preliminary injunction that, among other things, prohibited further trading of Spence and Green stock, the district court on May 24, 1974, appointed a temporary receiver to ensure compliance with the injunction, to manage the company and to conserve its assets. On October 27, 1975, the SEC moved for summary judgment against Spence and the company, defendant Farmer having accepted a consent judgment on July 27, 1973. Despite repeatedly having been directed to reply to the motion for summary judgment, Spence's only response was a motion for extension of time filed July 26, 1976. Soon thereafter, on August 27, the receiver executed a consent decree, agreeing to the proposed injunction against the company but admitting no violations; the court entered judgment on this decree on September 13, 1976. Finally, on November 22, 1976, the district court entered summary judgment against Spence on the basis of the SEC affidavits, depositions and hearing transcripts, having received no substantive response from Spence since the SEC's filing of the motion more than a year before.

### Summary Judgment Against Spence

■ Though a court ordinarily will indulge in presumptions and inferences favorable to a party resisting summary judgment, where one party advances a properly supported motion for summary judgment,

Fed.R.Civ.P. 56(e) expressly prohibits the resisting party from resting merely on the allegations and denials of his pleading. If he fails to answer by counter affidavits or otherwise, demonstrating specific facts showing there exists a genuine issue for trial, the court should enter that summary judgment which the law applied to the facts presented by the moving party will support. *United Steelworkers of America v. University of Alabama*, 599 F.2d 56, 61 (5th Cir. 1979). In this case despite at least two orders from the court and magistrate to answer, in over a year's time Spence filed no affidavits or memoranda to contradict the well-supported SEC motion.

One may forestall the mandate of rule 56(e), however, by presenting affidavits that contain specific facts explaining the failure to respond by counter affidavits demonstrating the existence of a genuine issue of fact; if justified by this explanation, the court may then grant a continuance to allow the resisting party to prepare its counter affidavits. Fed.R.Civ.P. 56(f). After having one motion for extension of time to answer denied orally from the bench, Spence's counsel again filed a memorandum requesting an extension of time to respond on July 26, 1976. Because the memorandum was sworn and because it attempted to justify Spence's failure to answer the SEC motion, the district court appropriately evaluated it as a rule 56(f) motion and affidavit. In the memorandum Spence's counsel made vague and conclusional claims that several unidentified conflicts appeared in the testimony contained in the hearing transcripts submitted with the SEC motion, argued that he had been allowed insufficient discovery to respond at that point, and suggested that he, as substituted counsel, had been unable to familiarize himself sufficiently with the case. He attributed the failure even to submit the affidavit of Spence himself to Spence's unrelenting involvement in the construction of a company project in Indiana. In granting summary judgment the court below rejected these contentions as not sufficiently spe-

cific and otherwise as inadequate justification for Spence's failure to respond.[1]

■ Because the burden on a party resisting summary judgment is not a heavy one, one must conclusively justify his entitlement to the shelter of rule 56(f) by presenting specific facts explaining the inability to make a substantive response as required by rule 56(e) and by specifically demonstrating "how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Willmar Poultry Co. v. Morton-Norwich Products, Inc.*, 520 F.2d 289, 297 (8th Cir. 1975), *cert. denied*, 424 U.S. 915, 96 S.Ct. 1116, 47 L.Ed.2d 320 (1976). The nonmovant may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts, *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 873 (5th Cir. 1978), particularly where, as here, ample time and opportunities for discovery have already lapsed. *First National Bank v. Cities Service Co.*, 391 U.S. 253, 294–99, 88 S.Ct. 1575, 1595–96, 20 L.Ed.2d 569 (1968); 10 C. Wright & A. Miller, Federal Practice and Procedure § 2740 at 726 (1973) (rule 56(f) will not be applied to aid a nondiligent party). *See Aviation Specialties, Inc. v. United Technologies Corp.*, 568 F.2d 1186, 1189 (5th Cir. 1978) (continuance refused where nonmovant had failed to initiate discovery even though its action had been on file for six months).

■ The determination of the adequacy of a nonmovant's rule 56(f) affidavits and the decision whether to grant a continuance thereon rests in the sound discretion of the trial court. 6 J. Moore, Federal Practice ¶ 56.24 at 56–1426–28. We hold that the district court's denial of Spence's motion in this case did not constitute an abuse of that discretion. *See Donofrio v. Camp*, 152 U.S.App.D.C. 280, 283, 470 F.2d 428, 431 (D.C.Cir. 1972).

■ Even where the nonmovant fails to make a proper response under rule 56(e) or (f), however, summary judgment is appropriate only to the extent that the movant has carried his burden, affirmatively demonstrating the absence of any genuine issue of material fact and showing the law to be in his favor. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). In establishing, chiefly through Spence's own admissions, the offerings of October 31, 1972, and March 20, 1973, the SEC has met its burden to demonstrate a prima facie violation of the registration requirements of the Securities Act, section 5(a), (c)[2] —that is, that the defendant offered or sold securities as to which no registration statement was in effect and that interstate transportation, communication or the mails were used in connection

1. In particular, in response to the argument that inadequate discovery had occurred, the court noted counsel's own failure, despite proddings from Spence's prior attorney, to enter a formal substitution and appearance with the court until April 20, 1976—over six months after his participation began. His not being entered as counsel of record rendered his early discovery requests unacceptable for filing with the court clerk.

2. Section 5(a), (c) of the Securities Act of 1933, 15 U.S.C. § 77e(a), (c), provides:

Section 5. (a) Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly—

(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or

(2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale.

\* \* \* \* \* \*

(c) It shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under section [8].

with that offer or sale. *SEC v. Continental Tobacco Co.*, 463 F.2d 137, 155 (5th Cir. 1972).

Even though the burden then shifted to the defendant to demonstrate his entitlement to an exemption to section 5, the SEC affirmatively demonstrated that Spence was entitled to no exemption for these two transactions. *See* 6 J. Moore, Federal Practice ¶ 56.15[8] at 56–643. By establishing that the offers in each situation were mailed to brokers and stockholders who were not Texas residents the SEC foreclosed any claim to the exemption for wholly intrastate offerings, 15 U.S.C. § 77c(a)(11). *Capital Funds, Inc. v. SEC*, 348 F.2d 582, 586 (8th Cir. 1965) (any part of an issue offered to a nonresident disqualifies entire offering).

Similarly, neither transaction falls within the "private placement" exemption of section 4(2), 15 U.S.C. § 77d(2). *See generally, SEC v. Ralston Purina Co.*, 346 U.S. 119, 73 S.Ct. 981, 97 L.Ed. 1494 (1953). While also employing other factors, such as number of offerees and units offered, this court has recognized the primary factor in qualifying for this exemption to be the knowledge of the offerees. *Doran v. Petroleum Management Corp.*, 545 F.2d 893, 904 (5th Cir. 1977). The court in *Doran* delineated this "knowledge" requirement as demanding that all *offerees*, not just purchasers, either (1) receive the same disclosure as would be derived from registration or (2) enjoy realistic access, by means of some special relationship to the issuer, to that information. *Id.* at 904–06. Obviously there was not sufficient actual disclosure to qualify either Spence and Green offering, the 1972 transaction having proceeded on a deficient Regulation A offering circular and the 1973 offer to receive loans with conversion privileges having been accompanied by even less information. Neither did the more than 300 shareholders in one instance, and 800 in the other, enjoy a special relationship with the company that allowed them realistic access to the necessary information. *See SEC v. Sunbeam Gold Mines Co.*, 95 F.2d 699, 702 (9th Cir. 1938) (confining an offer to one's shareholders does not bring it within the private placement exemption). Thus, the grant of summary judgment for Spence's violation of the registration requirements was justified.

That portion of the SEC motion based on violations of the antifraud provisions, section 17(a)[3] of the Securities Act and section 10(b)[4] of the Exchange Act and rule 10b–5,[5] is similarly well supported. The accom-

---

**3.** Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), provides:

> Section 17. (a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—
> (1) to employ any device, scheme, or artifice to defraud, or
> (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
> (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

**4.** Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), provides:

> Section 10. It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
> * * * * *
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

**5.** Rule 10b–5, 17 C.F.R. § 240.10b–5, provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,
> (a) to employ any device, scheme, or artifice to defraud,
> (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

panying transcripts and affidavits delineate numerous material misrepresentations and nondisclosures clearly proscribed by the antifraud provisions—for example, Spence's prediction that the stock would soon be worth over one hundred times its offering price, *SEC v. Dolnick*, 501 F.2d 1279, 1283 (7th Cir. 1974), and his failure to disclose in the offering circular either that a Spence and Green director had prepared the financial statements, *SEC v. Senex Corp.*, 399 F.Supp. 497, 504 (E.D.Ky.1975), *aff'd per curiam on other grounds*, 534 F.2d 1240 (6th Cir. 1976), or the unfavorable reports of the independent accountants and securities attorney, *id.* at 505.

Each of the acts substantiated by the evidence, however, related only to the October 31, 1972 offering. The SEC failed to demonstrate that any sales of stock occurred pursuant to this offering, and in fact Spence, in his administrative hearing testimony proffered by the SEC, explicitly denied any such sales. While section 17(a) pertains to offers as well as sales, section 10(b) and rule 10b–5 apply only to acts occurring "in connection with the purchase or sale" of securities. Absent this nexus with a sale or purchase, no section 10(b) or rule 10b–5 violation can be found. Accordingly, we reject the district court's ruling that Spence violated these two provisions. Because, however, the proscriptions of section 17(a) are substantially the same as those of section 10(b) and rule 10b–5, our ruling does not undermine the injunction issued by the district court. It is amply supported by the court's ruling that Spence violated section 17(a).[6]

(c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

6. Spence's misrepresentations and nondisclosures constituted a "practice . . . which . . . would operate as a fraud or deceit upon the purchaser" proscribed by § 17(a)(3). *Steadman v. SEC*, 603 F.2d 1126, 1133 n.8 (5th Cir. 1979). *Accord SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 198–99, 84 S.Ct. 275, 286, 11 L.Ed.2d 237 (1963).

 Thus, the movant SEC having amply supported its motion and allegations, summary judgment was properly granted by the district court. Moreover, given Spence's past conduct, his continued flouting of the federal securities laws and SEC procedures, and his position of control over his company's securities dealings, we affirm the imposition of the permanent injunction as required by the likelihood, in its absence, of future violations. *SEC v. Blatt*, 583 F.2d 1325, 1334 (5th Cir. 1978).

*Consent Judgment by the Receiver*

Spence next challenges the judgment of September 13, 1976, entered against the company on the basis of the consent decree executed by the receiver. We are, however, unable to discern any ground upon which Spence may predicate standing for this appeal.

 As a general rule a receiver, standing in the shoes of management, holds the sole right—absent some sort of shareholder derivative action—to direct the litigation of the corporation with whose care he is entrusted. *Landy v. Federal Deposit Insurance Corp.*, 486 F.2d 139, 146–48 (3d Cir. 1973), *cert. denied*, 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974). This includes the exclusive right to appeal from judgments adverse to the corporation. *See, e. g., Russell v. Weyand*, 5 Cal.App.2d 259, 42 P.2d 381 (1935). Nothing in the broad grant of power to the receiver appointed to manage Spence and Green suggests a deviation from the general rule. Therefore, Spence has no standing, individually, to press a direct appeal.

The proceedings in this case largely transpired before the decision in *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193, 96 S.Ct. 1375, 1380–81, 47 L.Ed.2d 668 (1976), which articulated the requirement of proof of scienter—an intent to deceive, manipulate, or defraud—in private actions under rule 10b–5. Thus, the issue of scienter was not addressed by the district court. This court has, however, ruled that proof of scienter is not required for SEC injunctive actions under § 17(a)(2), (3). *Steadman v. SEC*, 603 F.2d at 1133.

Spence might, nonetheless, have had appellate standing to dispute the judgment had he been party below to a separate order respecting the validity of the judgment. He has not, however, been a party to any other such appealable order. Spence filed a motion to vacate the consent judgment on September 20, 1976. The trial court declined to rule on the motion, however, because Spence filed his notice of direct appeal before the court could consider the motion to vacate. Accordingly, having found Spence to be without standing to maintain a direct appeal from the consent judgment and not to have been a party to any other appealable order, we dismiss his appeal challenging the company's consent judgment.

### Termination of Receivership

On July 1, 1976, Spence moved the court to terminate the receivership under which the company had operated since May 24, 1974. In his report filed January 19, 1977, the receiver, himself, recommended termination—provided the management of Spence and Green was restructured, ending Spence's one-man domination, to provide more stable internal financial controls. The SEC agreed to a termination of the receivership on the terms suggested by the receiver. When Spence rejected this compromise, the trial court elected to hold his motion to terminate in abeyance pending the outcome of these appeals.

■■■■ The decision whether to remove a receiver is, like the decision to appoint one, an equitable determination resting in the sound discretion of the district court and reviewable only for an abuse of that discretion. *Skirvin v. Mesta*, 141 F.2d 668, 673–74 (10th Cir. 1944). *See, e. g., Bookout v. First National Mortgage & Discount Co.*, 514 F.2d 757, 758 (5th Cir. 1975) (per curiam; review of appointment is for abuse of discretion). Nonetheless, the imposition of a receivership on a corporation is a drastic measure, the detrimental business effects of which should be carefully considered. A receivership once imposed on a corporation should be terminated and control returned to those who own the business as soon as the reason for its imposition ceases.

The "temporary" receivership in question has now controlled Spence and Green Chemical Company for almost six years. The receiver reports the company now to be solvent and in fairly stable condition due in part to a working agreement under which Spence and Green is collaborating with the Trumbull Asphalt Division of Owens-Corning Fiberglas Corporation, amicus curiae here, to employ commercially some of its chemical engineering developments. The receiver has indicated that the company will need to issue no new securities during its cooperation with Trumbull Asphalt. Moreover, our affirmance of the permanent injunctions against Spence and the company additionally reduces the probability that Spence will again engage in violations of the securities laws.

■■■ We cannot say that the trial court's decision, merely to hold in abeyance pending appeal the motion to terminate the receivership, constituted an abuse of discretion. Nonetheless, under the conditions that presently exist we would respectfully suggest that the trial court now exercise that discretion to return unconditional control of the corporation to its owners.

In regard to Spence's remaining points, having examined the record and considered Spence's arguments, we find his contentions attacking the refusal of the trial judge to recuse himself and his claim that curtailment of discovery deprived him of due process to be without merit.

Accordingly, we DISMISS the appeal in our number 76–4017 and otherwise AFFIRM the judgment below.