BURLINGTON COAT FACTORY
WAREHOUSE CORPORATION,
Plaintiff-Appellant,

v.

ESPRIT DE CORP. and Federated
Department Stores, Inc.,
Defendants-Appellees.

No. 957, Docket 85–7012.

United States Court of Appeals,
Second Circuit.

Argued March 27, 1985.

Decided Aug. 6, 1985.

Herbert S. Kassner, New York City (Stacy J. Haigney, Denise M. Cossu, Kassner, Haigney & Thompson, New York City, of counsel), for plaintiff-appellant.

Murray H. Bring, Washington, D.C. (G. Duane Vieth, John Kronstadt, Mark R. Merley, Arnold & Porter, Washington, D.C., Lois D. Thompson, Proskauer Rose Goetz & Mendelsohn, New York City, Thomas G. Cody, Sr. Vice President, Boris Auerbach, Vice President, Federated Dept. Stores, Inc., of counsel), for defendant-appellee Federated Dept. Stores, Inc.

Fredric W. Yerman, New York City (Richard A. De Sevo, Kaye, Scholer, Fierman, Hays & Handler, New York City, of counsel), for defendant-appellee Esprit De Corp.

Before FEINBERG, Chief Judge, and OAKES and WINTER, Circuit Judges.

WINTER, Circuit Judge:

Burlington Coat Factory Warehouse Corporation ("Burlington") appeals from Judge Duffy's grant of summary judgment. 597 F.Supp. 1199 (S.D.N.Y.1984). Burlington claims that Federated Department Stores, Inc. ("Federated") conspired with Esprit De Corp. ("Esprit") to fix resale prices in violation of § 1 of the Sherman Act, 15 U.S.C. § 1 (1982). Burlington also claims that pursuant to this conspiracy Esprit discontinued sales to Burlington in violation of their contract. We affirm the grant of summary judgment on the antitrust claim but reverse the grant of summary judgment on the contract claim.

BACKGROUND

Burlington is a no-frills, discount clothing retailer with over 30 outlets in numerous states east of the Mississippi. Federated is the owner of a number of full-price department store chains comprising one of the largest retailing organizations in the country. Esprit is a manufacturer of a high-price line of clothing that is sold under the Esprit name.

Until July, 1983, Esprit sold its clothing both to Burlington and Federated, with Federated being by far the larger purchaser. On July 29, Esprit refused to fill Burlington's most recent orders and informed Burlington that it would no longer sell to it.

In June, 1983, one month prior to Esprit's refusal to sell to Burlington, Alan Questrom, the chairman of one of Federated's chains, made a speech on off-price retailing at a meeting attended by representatives of some 600 major retailers and garment makers. His message was that Federated believed that discounters were

taking unfair advantage of the marketing efforts of full-price retailers. To end this free-riding, he stated, Federated was going to stop dealing with manufacturers who sold current-season fashions to discounters. He added that "[i]t is inconceivable to us at Federated how a manufacturer could possibly justify bastardizing a great brand name or designer in whom they have invested millions to build status, credibility and consumer confidence [by selling to off-pricers].... Doing business with a compromising [manufacturer] may just be too great a risk for the department store to take." He further stated that Federated would review the distribution policies of its suppliers to ensure that those policies were "compatible with [Federated's] marketing objectives."

Burlington claims that this speech was the cause of Esprit's refusal one month later to do further business with Burlington. Burlington also notes that Esprit cancelled its relationship with Burlington without following internal procedures requiring Esprit salespersons to take photographs of and file reports on retailers so that Esprit headquarters could determine that the retailers met Esprit marketing standards. Burlington also claims that Federated officials pressured other suppliers not to sell to Burlington.

Esprit claims that it was unaware of Questrom's statements and received no complaints from Federated about Burlington. Federated joins in that claim. Esprit also asserts that sales of its clothing were growing so rapidly that it was unable to fill all pending orders. As a result, it had to drop some retailers and chose to drop those that did not meet its marketing standards. Esprit markets its clothing as a coordinated group and prefers that its entire line be physically separated from other lines, a layout requirement not met by Burlington. Esprit asserts that resale prices were not a factor in its decision and notes that in the course of reducing the number of its retailers it retained some discount retailers whose layouts met Esprit's standards but dropped some full price retailers whose layouts did not. The precise circumstances surrounding termination of Burlington were that Burlington's July 1983 orders were five times larger than any previous order. This unexpected increase brought that company's relationship with Esprit to the immediate attention of Esprit senior management in part because Esprit suspected that Burlington was shipping Esprit clothing to areas not approved by Esprit.

Judge Duffy granted the defendants' motions for summary judgment, stating that there was no direct or circumstantial evidence of an illegal agreement between Esprit and Federated, evidence necessary under *Monsanto v. Spray-Rite Corp.*, 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984). Burlington argued that it needed time for additional discovery, but the district court denied the request, stating that Burlington had been inexcusably dilatory in pursuing discovery and had failed to explain how further discovery was necessary.

The district court also disposed *sub silentio* of the contract claim by dismissing the complaint in its entirety. It gave no explanation of why the contract claim was legally or factually insufficient.

## DISCUSSION

Burlington raises two issues on appeal with regard to the antitrust claim. First, it claims that its evidentiary submission creates a material issue of fact as to a conspiracy between Esprit and Federated. Second, it argues that it should have been granted time for additional discovery pursuant to Fed.R.Civ.P. 56(f). Regarding the contract claim, Burlington argues that the district court should not have dismissed the complaint in its entirety based solely on its disposition of the antitrust claims.

We address plaintiff's claims in light of the familiar rule that summary judgment under Fed.R.Civ.P. 56 may be granted only when, viewing the evidence in the light most favorable to the opponent of the motion, there is no genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The moving party

thus has the burden to demonstrate that there is no such disputed issue and that it is entitled to judgment as a matter of law. *Reborn Enterprises, Inc. v. Fine Child, Inc.*, 590 F.Supp. 1423, 1435 (S.D.N.Y. 1984), *aff'd* 754 F.2d 1072 (2d Cir.1985) (per curiam). However, disputes over irrelevant facts must not be allowed to obscure the lack of a material dispute, *Reborn,* 590 F.Supp. at 1436, *SEC v. Research Automation Corp.*, 585 F.2d 31, 35 (2d Cir.1978), and the party opposing the motion may not stand mute in reliance solely upon its allegations when facing a substantial evidentiary submission refuting its claim. An antitrust plaintiff may not, therefore, in opposing a motion for summary judgment, rest on conclusory assertions of conspiracy when the defendants have proffered substantial evidence supporting a plausible and legitimate explanation of their conduct. *First National Bank v. Cities Service Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968); *Reborn,* 590 F.Supp. at 1436.

### 1. *The Antitrust Claim*

The Supreme Court continues to adhere to the view that § 1 of the Sherman Act [1] proscribes vertical price fixing between a manufacturer and its distributers. *Monsanto,* 104 S.Ct. at 1469, n. 7. Burlington claims that Federated and Esprit conspired to engage in price fixing, conduct that violates § 1 and was the cause of Esprit's refusal to deal with Burlington, a professed discount seller.

■ In *Monsanto,* the Supreme Court described the proof necessary to show illegal price fixing between a manufacturer and a distributor. The Court noted: "A manufacturer of course generally has a right to deal, or refuse to deal, with whomever it likes, as long as it does so independently." *Monsanto,* 104 S.Ct. at 1469. Accordingly, the plaintiff must show concerted action by producing "evidence that tends to exclude the possibility that the manufacturer and nonterminated distributors were acting independently." *Id.* at 1471.

Burlington's claim of concerted action in the present case rests on the following:

1) the one month interval between Questrom's speech and Esprit's cancellation of Burlington;

2) Esprit's failure to follow its internal requirements that its salespersons take photographs and file a report before cancelling a retailer;

3) Esprit's failure to disclose to Burlington until after the cancellation Esprit's preference that retailers physically segregate Esprit clothing;

4) testimony by a Burlington official that he had heard that Federated pressured suppliers other than Esprit not to sell to Burlington.

■ We conclude that Burlington has failed to meet the *Monsanto* test. Direct complaints from Federated to Esprit would be, by themselves, insufficient to show a conspiracy between Federated and Esprit, even if Esprit cancelled Burlington immediately thereafter. "Permitting an agreement to be inferred merely from the existence of complaints, or even from the fact that termination came about 'in response to' complaints, could deter or penalize perfectly legitimate conduct.... Such complaints, particularly where the manufacturer has imposed a costly set of nonprice restrictions, 'arise in the normal course of business and do not indicate illegal concerted action.'" *Monsanto,* 104 S.Ct. at 1470 (quoting *Roesch, Inc. v. Star Cooler Corp.*, 671 F.2d 1168, 1172 (8th Cir.1982)). Burlington's case is thus inherently feeble because there is no evidence that Esprit and Federated ever discussed Burlington's discounting. Because a direct complaint by Federated to Esprit about Burlington's discounting would not be sufficient to make out a prima facie case, Questrom's speech, which was couched in generalities, is clear-

---

**1.** That section provides in part: "Every contract, combination in the form of a trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1 (1982).

ly inadequate to prove a conspiracy between Federated and Esprit with particular regard to Burlington, even if the contents of that speech were known by Esprit. This inadequacy becomes even more glaring in light of Burlington's failure even to allege that Esprit complained to Burlington about its discounting practices.

Esprit's failure to follow its internal procedures governing the termination of retailers adds little to Burlington's claim of concerted action. For a period of time before Questrom's speech, Esprit had been reducing the number of retailers with whom it dealt, preferring to keep those retailers that displayed Esprit clothing in the desired manner. In February, 1983, Esprit began requiring all salespersons to answer a questionnaire addressing the marketing policies of their retailers and to take photographs of the stores. Neither step was taken in Burlington's case, Esprit relied instead upon a salesperson's statement that Burlington was a no-frills retailer that did not segregate Esprit clothing. Burlington emphasizes that the Esprit salesperson had not inspected a Burlington store in four years. However, Burlington is a multi-outlet firm with highly publicized sales practices, and it does not dispute the accuracy of the salesperson's knowledge. Thus, Burlington never responded when Esprit offered to reconsider cancellation if Burlington offered the requisite photographs.

Esprit also explains the failure to follow the internal procedures by noting the particular circumstances surrounding Burlington's cancellation. Burlington's status as an Esprit retailer was raised in a fashion requiring prompt action as a consequence of its placing July orders five times larger than its largest previous order. Salespeople at Esprit had complained to Esprit's management that Burlington was shipping Esprit products to unauthorized areas. Moreover, the internal procedures themselves were new at the time, Burlington's retail practices were well known, and there was little time for inspecting Burlington's outlets. Esprit's showing is thus ample to rebut what is, given the lack of evidence of any contact between Esprit and Federated

regarding Burlington, at best a claim of suspicious circumstances.

Unlike *Monsanto,* the present case does not involve an issue as to the honesty of the claim that the cancellation was based on retail marketing requirements. In *Monsanto* there was a triable issue of fact because of evidence that the marketing requirements were not disclosed prior to termination and became important to the manufacturer only after litigation was commenced. *Monsanto,* 104 S.Ct. at 1472. In the present case, Esprit also did not disclose its marketing requirements to Burlington until after the cancellation. However, the uncontradicted evidence is that Esprit had such a policy and was reducing the number of its retailers. In addition, the existence of the plan was of crucial importance in *Monsanto* because there was evidence of complaints by competing retailers, evidence lacking in the present case.

■ Burlington also relies on the uncorroborated hearsay testimony of its own personnel. They stated that other suppliers had informed them that Federated was applying pressure not to sell to Burlington. This testimony hardly outweighs the lack of any evidence of similar pressure on Esprit, a not insignificant omission in an action which alleges that Federated conspired with Esprit. In any event, we need not consider such evidence because Burlington cannot rely on inadmissible hearsay in opposing a motion for summary judgment, *see Oreck Corp. v. Whirlpool Corp.,* 639 F.2d 75, 80–81 (2d Cir.1980); *Filco v. Amana Refrigerator, Inc.,* 709 F.2d 1257, 1267 (9th Cir.1983); *Contemporary Mission, Inc. v. U.S. Postal Service,* 648 F.2d 97, 105 n. 11 (2d Cir.1981); *Price v. Worldvision Enterprises, Inc.,* 455 F.Supp. 252, 266 n. 25 (S.D.N.Y.1978); *Lyon Ford, Inc. v. Ford Motor Co.,* 342 F.Supp. 1339, 1343 (S.D.N.Y.1971), absent a showing that admissible evidence will be available at trial. Burlington has made no such showing.

■ In *Reborn,* we recently considered an appeal similar to the present matter. In that case, a discount retailer claimed that a

manufacturer discontinued it because of complaints from other retailers. In *Reborn*, there was evidence of:

1) direct complaints by competing retailers to the manufacturer about the plaintiff's discounting;

2) pressure from the manufacturer to follow a suggested retail price list;

3) complaints from the manufacturer to the plaintiff regarding the plaintiff's discounting.

*Reborn*, 590 F.Supp. at 1432–34. Nonetheless, we affirmed the district court's conclusion that, in light of *Monsanto*, none of this evidence created a genuine issue over the existence of a conspiracy between the manufacturer and the other retailers to fix prices and that "[t]he evidence proffered by Reborn would demonstrate at most exposition, persuasion, argument, or pressure, which are alone insufficient to establish coercion." *Id.* at 1440. Burlington's showing here is considerably less persuasive.

## 2. *Burlington's Need for More Discovery*

■ Burlington opposed the motion for summary judgment on the grounds that it needed more time to conduct discovery. On appeal, it relies upon Rule 56(f), Fed.R. Civ.P., which states:

Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

The district court's denial of more time is subject to reversal only if it abused its discretion. *Contemporary Mission*, 648 F.2d at 105. Nevertheless, a denial of access to relevant information weighs in favor of the party opposing a motion for summary judgment. *Landmark Land Company, Inc. v. Sprague*, 701 F.2d 1065, 1070 (2d Cir.1983). We conclude, however, that whatever discovery went undone was the consequence of Burlington's own conduct and was in any event inconsequential.

Burlington filed its complaint on October 7, 1983. Federated and Esprit filed their answers on November 3 and December 19 respectively. Burlington made no effort to conduct discovery until April 16, 1984, when it served interrogatories on Esprit. Esprit answered those interrogatories on May 14. In the meantime, on February 24, Burlington and Federated signed a stipulation regarding the timetable by which Burlington would comply with Federated's discovery requests, with the express understanding that there would be an "early filing of a motion for summary disposition" by Federated. On May 15 and 16, Burlington deposed Esprit's national sales manager and three of its salesmen. On June 5, following these depositions, Esprit also warned Burlington that it would expeditiously move for summary judgment.

On June 27, more than one month after these depositions, six months after Esprit filed its answer, and eight months after Burlington filed its complaint, Burlington served its first interrogatories and requests for documents on Federated. On July 2, Federated moved for summary judgment. However, it delayed the return date of that motion until after Federated had answered Burlington's interrogatories and requests for documents, which it did on August 15. On August 22, Esprit also moved for summary judgment. On October 1, Burlington filed its memorandum in opposition to summary judgment. The district court granted the motion for summary judgment on November 19, 1984.

■ The defendants responded cooperatively to Burlington's discovery requests and by August 15 had complied with all of them. They had previously warned Burlington that they intended to move for summary judgment and, after the motion was filed, delayed its return date to allow pending discovery to be completed. Burlington, on the other hand, waited some four months after Federated had alerted it to the forthcoming motion for summary judgment before seeking any discovery from

Federated. Moreover, it was not until October 1, when Burlington filed its memorandum in opposition to the motion for summary judgment, that Burlington gave any indication that it considered its discovery to be inadequate. Finally, there is no reason to believe Burlington's discovery was not sufficient. It had deposed the principal actors for Esprit and had received answers to its interrogatories and requests for documents from both defendants.

In its memorandum opposing summary judgment, Burlington stated that it wished to depose the secretary treasurer of Esprit and the president of Esprit's sports division. The secretary became involved in this matter only after Burlington threatened to sue Esprit, and Burlington stated only that it wanted to question her about why she refused to return phone calls from Burlington. Burlington stated that it wanted to question the president of Esprit's sports division as to why he refused to ship clothing to Burlington, once Esprit's other division had so refused. Burlington also complained that it had been unable to depose any of the 129 employees of Federated that Federated identified through interrogatories as having had contact with Esprit. Burlington now concedes that it would have been unreasonable to depose all of the identified employees but argues that it should have been able to depose some of them. However, neither in its memorandum in the district court nor in its brief before us, has Burlington stated which employees it wanted to depose or disclosed with any specificity what it desired to elicit. We regard all of these claims as to the need for more discovery as marginal, permissible if made in a timely fashion, but hardly adequate grounds for delay when made at the eleventh hour.

■■■ Finally, we note that Rule 56(f) requires the opponent of a motion for summary judgment who claims to be unable to produce evidence in opposition to the motion to file an affidavit explaining:

1) the nature of the uncompleted discovery, i.e., what facts are sought and how they are to be obtained; and

2) how those facts are reasonably expected to create a genuine issue of material fact; and

3) what efforts the affiant has made to obtain those facts; and

4) why those efforts were unsuccessful.

*See Paul Kadair, Inc. v. Sony Corp. of America*, 694 F.2d 1017 (5th Cir.1983); *see also SEC v. Spence & Green Chemical Co.*, 612 F.2d 896, 901 (5th Cir.1980) (must explain inability to obtain facts and demonstrate how postponement will correct problem; cannot rely on vague assertions regarding nature of facts to be discovered). Burlington never filed such an affidavit. Instead, it mentioned Rule 56(f) for the first time only in its memorandum in opposition to the defendant's motion for summary judgment. A memorandum is not a substitute for an affidavit under Rule 56(f), *S.A. Empresa De Viacao Aerea Rio Grandense v. Walter Kidde & Co.*, 690 F.2d 1235, 1238 (9th Cir.1982); *Schoenbaum v. Firstbrook*, 268 F.Supp. 385, 390 (S.D.N.Y.), *aff'd*, 405 F.2d 200, *aff'd in part and rev'd in part*, 405 F.2d 215 (2d Cir.1967) (en banc), and it has been held that the failure to file such an affidavit under Rule 56(f) is by itself enough to reject a claim that the opportunity for discovery was inadequate. *Mid-South Grizzlies v. National Football League*, 720 F.2d 772, 780 & n. 4 (3d Cir.1983), *see also Shavrnoch v. Clark Oil & Refining Corp.*, 726 F.2d 291, 294 (6th Cir.1984); *Lewis v. Knutson*, 699 F.2d 230, 240 (5th Cir.1983); *Munitrad Systems, Inc. v. Standard & Poor's Corp.*, 672 F.2d 436, 440 (5th Cir.1982); *THI-Hawaii, Inc. v. First Commerce Financial Corp.*, 627 F.2d 991, 994 (9th Cir.1980); *British Airways Board v. Boeing Co.*, 585 F.2d 946, 954 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979); *Scooper Dooper, Inc. v. Kraftco Corp.*, 494 F.2d 840, 849–50 (3d Cir.1974).

The district court was therefore within its discretion in rejecting Burlington's claim that more discovery was appropriate. *See Paul Kadair*, 694 F.2d at 1031; *see also Contemporary Mission*, 648 F.2d at

107 (request for further discovery rejected when request based on pure speculation of what would be discovered); *Walters v. City of Ocean Springs*, 626 F.2d 1317, 1321–22 (5th Cir.1980) (per curiam) (affidavit should allege with sufficient particularity the controverting facts and that a genuine issue of material fact will be created; party must use discovery mechanisms in timely manner); *Spence & Green Chemical Co.*, 612 F.2d at 901; *Willmar Poultry Co. v. Morton-Norwich Products, Inc.*, 520 F.2d 289, 297 (8th Cir.1975) (must show purpose served by further discovery).

 Burlington has also argued before us that answering the various requests for discovery by defendants and responding to a counterclaim for abuse of process and vexatious litigation[2] precluded it from conducting its own discovery. We have examined all the relevant materials and reject this claim as frivolous. Burlington had ample time in which to pursue the discovery that it now claims is essential. *Cf. White v. Hearst Corp.*, 669 F.2d 14, 15–16 (1st Cir.1982) (complaint filed May 6, summary judgment granted November 10); *Program Engineering, Inc. v. Triangle Publications, Inc.*, 634 F.2d 1188, 1191 (9th Cir.1980) (eight months for discovery); *Person v. New York Post Corp.*, 427 F.Supp. 1297, 1301 (E.D.N.Y.1977) (summary judgment granted seven months after complaint filed). There is, of course, no litmus test to determine the exact amount of time needed for discovery in a particular case. Claims of a need for more discovery by a party who has diligently used the time available, however, should be given more favorable consideration than claims by one who has allowed months to pass unused. Moreover, when alerted to a forthcoming

**2.** We take note of one matter unrelated to the disposition of this case.

Burlington employees secretly recorded a phone call and a meeting they had with Esprit employees during the month of August, 1983. Both recordings fully support Esprit's version of the relevant facts. However, during the secretly recorded meeting, Norman Ross, General Merchandise Manager of Burlington, stated:

There is no way, Lee [Leon Rosenberg, National Sales Manager of Esprit], I'm telling you as a friend—'cause this might be the only time we are going to be friends. Between you and I, Monroe Milstein, who is the present owner of the company—I used to own part of the company; when we went public, I sold it to him. There is no possible way that any vendor, name brand vendor we do business is going to drop us, as far as he is concerned. No possible way. He's not only got lawyers.... We've got fifteen lawsuits going now. Believe me, I know all the legal ramifications. They are disastrous. They go on forever. The only ones that make money are the attorneys. We've got one lawsuit with Interco and London Fog and Devon that started six years ago. Six years ago, it's still going on. So far, Interco fired two banks of attorneys. It cost $950,000 and it ain't got to court yet. It ain't never going to be over. I'm sure of that. There are depositions after depositions which you and I and Elissa [Kraemer, buyer for Burlington] and Bernie [Frishberg, salesman for Esprit] will be in for 10 to 12 hours at a time. I am telling you, this thing is endless. Believe me, there is no way I'm threatening you. I am just telling you as a friend. He will not stop. No way."

At his deposition, Mr. Ross testified:
Q. Is it the policy of Burlington Coat to initiate a lawsuit against any vendor who stops selling to you?
A. It's not a policy.
Q. What is it?
A. It's a decision.

 \* \* \* \* \* \*

Q. On what basis is this decision made in each instance?
A. On how important the vendor is to us.
Q. So if it's an important vendor, you would sue?
A. If it's a sizable loss of business that we can't replace, we would sue, yes.
Q. And if it's not an important vendor, you would not sue?
A. We would not sue.

To the extent these remarks and testimony suggest that Burlington has an ongoing policy of bringing litigation without regard to the merits solely to affect business decisions of those with whom it deals, we bring to counsel's attention the following: *Eastway Construction Corp. v. City of New York*, 762 F.2d 243 (2d Cir.1985) (sanctions under Rule 11, Fed.R.Civ.P., are mandatory against attorney and/or client when a pleading has been interposed for an improper purpose or where a competent attorney could not reasonably believe the pleading is well grounded in fact or law; showing of subjective bad faith no longer required); *Landmarks Holding Co. v. Bermant*, 664 F.2d 891, 896 (2d Cir. 1981) (antitrust liability for bringing of litigation without regard to merits in order to injure competitors); Code of Professional Responsibility, DR 7–102.

motion for summary judgment, a party wanting more time for discovery should seek, through negotiation with the other party and, if necessary, through application to the district court, an appropriate discovery schedule. A party who both fails to use the time available and takes no steps to seek more time until after a summary judgment motion has been filed need not be allowed more time for discovery absent a strong showing of need.

### 3. *The Contract Claim*

█ Burlington also appeals the granting of summary judgment on its contract claim against Esprit, based on Esprit's refusal to fill the July 1983 order. Esprit claims that Burlington does not have standing to bring a claim because Esprit contracted with the individual Burlington stores, which are separate subsidiary corporations. The district court dismissed this claim when it dismissed the entire complaint but never stated its reasons for doing so.

The district court's failure to provide us with its reasons for dismissing the claim and the conflicting factual assertions of the parties leave us with a record inappropriate for review. *See Mercy Hospital v. NLRB,* 668 F.2d 661, 664 (2d Cir.1982). We therefore reverse the dismissal of the contract claim and remand for further proceedings. Naturally, we express no opinion regarding the underlying merits of the claim, nor do we mean either to preclude or to encourage another motion for summary judgment.

Affirmed in part and reversed and remanded in part.