# United States Court of Appeals for the Fifth Circuit

———————————

No. 25-60168

———————————

United States Court of Appeals
Fifth Circuit

**FILED**

February 11, 2026

Lyle W. Cayce
Clerk

CORPORATE MANAGEMENT, INCORPORATED, *a Mississippi corporation* (CMI); STONE COUNTY HOSPITAL, INCORPORATED; H. TED CAIN, *professionally and in his individual capacity*; JULIE CAIN; THOMAS KULUZ,

*Defendants—Appellants*,

*versus*

DEREK A. HENDERSON,

*Appellee*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:16-CV-369

———————————————————————

Before SOUTHWICK, WILLETT, and HO, *Circuit Judges*.

PER CURIAM:*

This appeal arises from long-running proceedings under the False Claims Act (FCA) stemming from Defendants' fraudulent Medicare reporting. After the district court imposed a receivership—and after Defendants ultimately satisfied the judgment—unresolved matters

———————————————

* This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

remained. Concluding that those remaining issues warranted continued judicial supervision, the district court declined to terminate the receivership. Our task is to decide whether that decision exceeded the court's discretion. It did not. We therefore AFFIRM.

I

In 2007, James Aldridge, acting as Relator on behalf of the United States, sued Defendants—Ted Cain and his business entities—for FCA violations. The Government intervened eight years later. Following a jury trial in 2020, Defendants were found jointly and severally liable for over $32 million. We cut that judgment in half on appeal. *See United States ex rel. Aldridge v. Corp. Mgmt., Inc.*, 78 F.4th 727, 747 (5th Cir. 2023).

Rather than pay the judgment, Defendants sought to evade payment by transferring assets. In response, the Government filed a motion for contempt, prompting the district court to appoint a receiver, Derek Henderson (Receiver), to oversee Defendants' estate and to ensure satisfaction of the judgment. Citing its "inherent equitable authority, Federal Rule of Civil Procedure 66[,] and 28 U.S.C. § 3103," the district court also entered a supplemental order (Receivership Order) detailing the Receiver's broad powers over Defendants, including their affairs with third parties.

Defendants eventually obtained a loan to satisfy the judgment on April 25, 2024. Shortly thereafter, Defendants attempted to end the receivership by unilaterally blocking the Receiver's access to certain bank accounts and filing a motion to terminate. The Receiver opposed termination as premature due to the number of matters left to resolve. Although the Government filed its Notice of Satisfaction of Judgment the following month, it nevertheless "acknowledge[d] that there are still several matters before [the district court] that require resolution, including the active [r]eceivership . . . and . . . [the Relator]'s Judgment for Fees." The Relator conveyed the same: "[C]ontrary

to Defendants' Motion to Terminate the Receivership, there are matters to be finalized and paid." In July 2024, the parties reached a settlement on Relator's fees.

Despite resolution of the Government's and Relator's lingering business, other matters remained outstanding. Those matters included the Receiver's compensation and release, as well as the orderly wind-up of the receivership. Additionally, while the motion to terminate was pending, a third-party creditor, Robert Johnson, filed a motion to intervene. Johnson had previously obtained a $200,000 state-court judgment (Johnson Judgment) in a wrongful-death suit against a receivership entity—Woodland Village Nursing, LLC (Woodland Village)—in 2023. Johnson sought to intervene because the Receivership Order impeded his execution of the state-court judgment.

Because of the Johnson Judgment and other remaining issues, the district court denied Defendants' motion to terminate on June 24, 2024. Defendants sought reconsideration of that decision. On July 29, 2024, the district court held a hearing to discuss various outstanding matters. The court ordered the parties to submit additional briefing, and, on February 18, 2025, conducted a follow-up status conference. During that conference, the court "order[ed] [the Receiver] to take the action that he needs to take in order to satisfy the [Johnson] [J]udgment."

Two text-only orders followed on February 28, 2025. The first permitted Johnson to intervene, and the second denied reconsideration of the termination decision. As to reconsideration, the court stated that it "orally denied this motion from the bench at its 2/18/2025, hearing" after "find[ing] that the [R]eceiver's involvement is necessary to close out the pending motions and outstanding matters in this case." One of those matters—along with winding up the receivership—was Johnson's pending summary-

No. 25-60168

judgment motion, which the district court indicated it would resolve in "a comprehensive written order."[1] The district court expressly noted that Defendants could re-urge termination "once all pending matters have been resolved."

Defendants separately appealed both orders. This appeal solely concerns the termination decision. The intervention decision was the subject of a different appeal, which we recently dismissed for lack of appellate jurisdiction. *See Aldridge v. Stone Cnty. Hosp., Inc.*, 161 F.4th 257, 259 (5th Cir. 2025).

## II

We have interlocutory jurisdiction under 28 U.S.C. § 1292(a)(2), which authorizes appeals from decisions "refusing . . . to wind up receiverships or to take steps to accomplish the purposes thereof." That statute squarely covers the orders at issue here. We review a decision to continue or terminate a receivership for abuse of discretion. *SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 839 (5th Cir. 2019). Under this standard, reversal is warranted only if the district court relied on an erroneous view of the law or made a clearly erroneous assessment of the evidence. *Id.*

## III

Defendants argue primarily that the receivership has outlived its lawful purpose because the judgment has been fully satisfied. According to Defendants, continued operation of the receivership after the judgment violates 28 U.S.C. § 3103(c), unlawfully restrains their business operations,

---

[1] The district court has since ruled on this motion, awarding summary judgment to Johnson and ordering the payment of the Johnson Judgment. This ruling post-dated the court's denial of Defendants' motion to terminate the receivership and their motion for reconsideration.

and freezes assets without justification. We disagree. The district court reasonably concluded that termination of the receivership was premature because the Receiver's continued involvement was needed to resolve remaining administrative and third-party creditor matters.

Federal law provides that "[a] receivership shall not continue past the entry of judgment, or the conclusion of an appeal of such judgment, unless the court . . . *otherwise directs its continuation*." 28 U.S.C. § 3103(c) (emphasis added). Section 3103(c) does not mandate automatic termination upon satisfaction of a judgment. *See id.* Instead, it expressly preserves the district court's authority to continue a receivership when the court "otherwise directs." *Id.* Here, the district court did "otherwise direct" continuation and explained why: "the [R]eceiver's involvement is necessary to close out the pending motions and outstanding matters in this case." That explanation, though concise,[2] finds support in the record.

Multiple hearings and filings revealed that unresolved receivership-administration tasks, creditor-related matters, and an ongoing state-court lawsuit to which the receivership was a party remained at the time of the challenged orders. Most notably, the district court determined that an unresolved creditor issue—the Johnson Judgment—should be addressed within the receivership framework. *See also Aldridge*, 161 F.4th 259 (recognizing in the related intervention appeal that "Defendants continued to press for the Receivership to be terminated, *despite numerous issues remaining unresolved*, now including Johnson's intervention" (emphasis added)). We agree that it was reasonable to leave the receivership open so that unresolved claims could be pursued within the receivership structure,

---

[2] The statutory language imposes no requirement to issue formal written findings or to use particular phrasing. *See* 28 U.S.C. § 3103(c).

particularly when the district court explained to Defendants that termination could be re-urged once those matters were resolved. This reflects an exercise of sound judgment and satisfies § 3103(c)'s "if the court otherwise directs" exception to termination.

Independent of § 3103(c), the district court also imposed the receivership under its "inherent equitable powers." As with § 3103, satisfaction of the judgment does not automatically necessitate termination of an equitable receivership when outstanding matters remain. *See SEC v. Spence & Green Chem. Co.*, 612 F.2d 896, 904 (5th Cir. 1980); *see also Consol. Rail Corp. v. Fore River Ry. Co.*, 861 F.2d 322, 327 (1st Cir. 1988); *WB Music Corp. v. Royce Int'l Broad Corp.*, 47 F.4th 944, 952 (9th Cir. 2022). Instead, "the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." *SEC v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 372–73 (5th Cir. 1982). Even Defendants acknowledge the existence of unresolved matters.

Defendants further argue that the Receiver's freezing of certain accounts and ongoing oversight of business operations are unjustified now that the federal judgment has been paid. But the record does not indicate that these controls were imposed arbitrarily or for punitive reasons. The Receiver explained that asset restrictions and operational oversight remained necessary to prevent dissipation, to preserve the status quo while unresolved claims were addressed, and to ensure that receivership assets were available to satisfy court-approved obligations. The district court was entitled to credit those representations, particularly given its nearly twenty-year history with the case, as well as Defendants' past disregard of court orders and evasive asset transfers. *See Spence & Green Chem. Co.*, 612 F.2d at 904.

Importantly, the district court did not adopt a punitive rationale in leaving open the receivership and instead grounded its decision in the need

to resolve specific matters before termination. Nor did the district court entrench the receivership indefinitely. It denied termination without prejudice and expressly invited renewed motions once pending matters were resolved. That approach reflects ongoing supervision and incremental decision-making—not an arbitrary extension. It is also consistent with the Receivership Order itself, which contemplated post-judgment administration, including payment of the Receiver's compensation, final accounting, and an orderly wind-up. These are not ministerial formalities, but core functions attendant to the close of a receivership.

On this record, the district court acted within its discretion when it concluded that terminating the receivership was premature. This conclusion accords with our case law recognizing that a receivership may continue beyond satisfaction of its original purpose when necessary to complete administrative tasks and protect the interests of creditors and the estate. *See id.*; *Safety Fin. Serv., Inc.*, 674 F.2d at 372–73; *Stanford Int'l Bank, Ltd.*, 927 F.3d at 840.

That said, we are mindful that the receivership's primary purpose—the satisfaction of the judgment—was achieved in May 2024. Prolonged continuation after satisfaction of a judgment understandably raises questions about the proper scope and duration of post-judgment receiverships. A receivership, after all, is an "extraordinary remedy." *Netsphere Inc. v. Baron*, 703 F.3d 296, 305 (5th Cir. 2012) (citation omitted). Our decision today should not be read to endorse the indefinite continuation of a receivership once its central purpose has been achieved. Section 3103(c) reflects Congress's expectation that receiverships ordinarily will terminate once wind-up tasks are complete, and our precedent counsels the same.

There have been multiple developments since the district court's prior termination decisions, including the Receiver's filing of its own motion

No. 25-60168

to terminate. Perhaps those developments now warrant "that the trial court ... exercise [its] discretion to return unconditional control of the corporation to its owner[]." *Spence & Green Chem. Co.*, 612 F.2d at 904. We leave that determination to the district court in the first instance. For purposes of this appeal, however, we conclude that the district court did not abuse its discretion when it denied termination—and reconsideration of that decision—based on the circumstances then before it.

IV

Under the deferential abuse-of-discretion standard, we may not substitute our judgment for that of the district court simply because the receivership has persisted longer than Defendants believe necessary. The question, rather, is whether the district court's decision to delay termination fell outside the range of permissible choices. On this record, it did not. Although Defendants disagree with the district court's decision about when to terminate or limit the receivership, disagreement alone does not establish an abuse of discretion. The district court identified ongoing administrative and creditor-related reasons for continuation and indicated a willingness to terminate once those reasons no longer exist. Those determinations are neither premised on an erroneous view of the law nor on a clearly erroneous assessment of the evidence. Because the district court's decision fell within the bounds of permissible discretion, we AFFIRM.

No. 25-60168

JAMES C. HO, *Circuit Judge*, concurring in the judgment:

"Receivership is an extraordinary remedy that should be employed with the utmost caution and is justified only where there is a clear necessity to protect a party's interest in property, legal and less drastic equitable remedies are inadequate, and the benefits of receivership outweigh the burdens on the affected parties." *Netsphere, Inc. v. Baron*, 703 F.3d 296, 305 (5th Cir. 2012) (quotations omitted). "A receivership once imposed on a corporation should be terminated and control returned to those who own the business as soon as the reason for its imposition ceases." *SEC v. Spence & Green Chem. Co.*, 612 F.2d 896, 904 (5th Cir. 1980). Accordingly, I join the court today in "respectfully suggest[ing] that the trial court . . . return unconditional control of the corporation to its owners" as soon as practicable. *Id.*