**Ruben MENDEZ, Plaintiff,**

v.

**Edward WALKER, Defendant.**

**No. 96–CV–325C(H).**

United States District Court,
W.D. New York.

Aug. 19, 2000.

Ruben Mendez, plaintiff pro se.

Eliot Spitzer, Attorney General of the State of New York (John C. Luzier, Assistant Attorney General, of counsel), Buffalo, NY, for defendants.

## DECISION AND ORDER

CURTIN, District Judge.

### INTRODUCTION

Plaintiff Ruben Mendez, formerly a prisoner at Attica Correctional Facility ("Attica"), brings this *pro se* action for $50 million in monetary damages and the costs of reconstructive surgery pursuant to 42 U.S.C. § 1983. Under separate orders dated June 3, 1996 and December 23, 1998, plaintiff's action against defendant Walter Kelly, Superintendent of Attica, was dismissed and plaintiff's motion to amend his complaint and add as a defendant the Superintendent of Security at Attica was denied. Items 5 and 62. Plaintiff alleges that the remaining defendant, Edward Walker, a corrections officer at Attica, opened the door to his cell and permitted a fellow inmate to enter the cell and assault the plaintiff, in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Item 2. Consideration of defendant Walker's motion to dismiss the complaint or to grant summary judgment pursuant to Fed.R.Civ.P. 56 was suspended until the completion of discovery. Item 37. Defendant Walker now renews his motion for summary judgment or, alternatively, for an order to dismiss the complaint for plaintiff's failure to comply with orders of the court pursuant to Fed.R.Civ.P. 41(b). Item 70. For the reasons set forth below, defendant's renewed motion for summary judgment is denied pending further discovery, and defendant's motion to dismiss is denied.

### BACKGROUND

The following uncontested facts are set forth in affidavits and exhibits submitted to the court by plaintiff and defendant. At all times relevant to this suit, plaintiff was an inmate at Attica and defendant was a corrections officer at the same facility. In the mid-afternoon on November 29, 1995, plaintiff Mendez was involved in a fight with another inmate, Rubin Velez, in the "C-yard" at Attica. Item 33, ¶ 3. As a result of this incident, both inmates were confined to their cells on a keeplock status in the 25 and 26 companies of Attica, cellblock "C." *Id.* at ¶ 4. A few days later, on December 2, 1995, Mendez and inmate Velez engaged in another altercation. As a result of the second altercation, Mendez suffered two stab wounds, one deep wound in the center of his chest and a second stab wound in the upper area of the chest. Item 18, Exhibit C; *see also* Item 75, p. 27. Due to the serious nature of the injuries, Mendez was taken to the Erie County Medical Center, where he was operated on to repair damage from the wounds inflicted by Velez. *See* Item 75, pp. 5–25. Inmate Velez suffered a puncture wound and a laceration; both wounds were attended to at the Attica emergency room. Item 18, Exhibit C. The second altercation occurred while the defendant, Officer Walker, was supervising the collection of empty feed-up trays and keeplock showers on cellblock "C." Item 33, ¶ 5.

Except for the foregoing, the parties offer contrasting accounts of the events surrounding the first and second alterca-

tions between Mendez and Velez. According to Mendez, after the fight on November 29, 1995, inmate Velez informed Mendez that he intended to ask his "friend," defendant Walker, to open Mendez's cell, thereby allowing Velez to "kill" Mendez. Item 2, p. 3; Item 15, p. 2.[1] Mendez alleges that on December 2, 1995, defendant Walker motioned for Mendez to come out of his cell after it was opened. Item 13, p. 2. Further, Mendez claims that Velez *attacked him* when he came out of his cell. Item 2, p. 4; Item 13, p. 2.

Officer Walker states that he was in the "25–26 company cage" when the second altercation occurred, a position from which he could not physically reach the inmates. Item 31, ¶ 6. Walker maintains that inmate Velez's cell was opened first to permit him to have his "keeplock shower." *Id.* at ¶ 5. Walker claims that he then opened Mendez's cell to permit another inmate to collect his feed-up tray. *Id.* at ¶ 7. In contrast to Mendez's recollection of events, Walker avers that Mendez ran out of his cell upon its being opened and "attacked" inmate Velez with what turned out to be an 11–inch "shank." *Id* at ¶ 7.[2] Velez, in turn, allegedly counter-attacked with a 7–inch "shank." After Walker called for help, two officers arrived on the scene, and the fight concluded shortly thereafter. Item 18, Exhibit A.

Walker claims that he did not know inmates Mendez or Velez prior to the second incident. Item 31, ¶ 10. He also denies having any knowledge of the first altercation between the two inmates. *Id.* at ¶ 11. Further, he maintains that it was impossible for him to motion Mendez out of his cell from his position within the "25–26 company cage." *Id.* at ¶ 12. It is apparent that both parties' versions of the facts leading up to the second altercation cannot be corroborated, as there are no witnesses. *See* Item 18, Exhibit D, pp. 12, 13, 15, 16, and 20.

## DISCUSSION

### I. Defendant's Motion for Summary Judgment

#### A. The Summary Judgment Standard

The fundamental principles governing consideration of a motion for summary judgment are well settled. Summary judgment will be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs. Ltd. Partnership*, 22 F.3d 1219, 1223 (2d Cir.1994). When determining whether material facts are in dispute, courts must resolve all ambiguities and draw all inferences in a light most

---

1. The court notes that this hearsay statement from Mendez is inadmissible either at trial or at summary judgment; it is an out-of-court statement "offered ... to prove the truth of the matter asserted." Fed.R.Evid. 801(c). Here, the statement was submitted for the purpose of establishing that Walker had knowledge of the risk of substantial harm to the plaintiff and was deliberately indifferent to such risk. Therefore, because it would be inadmissible at trial, Mendez may not rely on this statement in order to survive Walker's motion for summary judgment. *See H. Sand & Co., Inc. v. Airtemp Corp.*, 934 F.2d 450, 454–455 (2d Cir.1991) ("*hearsay testimony* ... that would not be admissible if testified to at trial may not properly be set forth in [a

Rule 56] affidavit") (internal quotations omitted); *see also Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir.1985) (a litigant "cannot rely on inadmissible hearsay in opposing a motion for summary judgment, absent a showing that admissible evidence will be available at trial") (citations omitted).

2. Although Mendez does not disavow use of a weapon in his complaint or in later affidavits submitted to resist defendant's motion for summary judgment, at his original Tier III disciplinary hearing he denied the use of any weapon in the altercation on December 2, 1995. *See* Item 18, pp. 5–6.

favorable to the non-moving party. *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curia); *see also Castle Rock Entertainment, Inc., v. Carol Publ'g Group, Inc.,* 150 F.3d 132, 137 (2d Cir.1998).

■ While the same standards for summary judgment apply where a claim is brought by a *pro se* litigant, "special solicitude should be afforded pro se litigants ... when confronted with motions for summary judgment." *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988); *see also Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994) (courts "read [a *pro se* litigant's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest") (citations omitted).

Initially, the moving party bears the burden of identifying the matter that "demonstrate[s] the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. If the moving party meets this initial burden, the burden then shifts to the non-moving party to set forth "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e). The role of the court is not to resolve any dispute as to material facts, but rather to review the record as a whole and determine whether it supports any issues that will require a trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### B. The Eighth Amendment Failure to Protect Claim

■ Title 42 U.S.C. § 1983 provides in relevant part that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law...." 42 U.S.C.A. § 1983 (West 1994). In order to maintain a claim under section 1983, a plaintiff must allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law, and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States. *Dwares v. City of New York,* 985 F.2d 94, 98 (2d Cir.1993). It is evident that defendant Walker, as a state corrections officer, was acting under color of state law when he opened plaintiff's cell. Additionally, it is apparent from plaintiff's complaint that his claim involves the deprivation of his Eighth Amendment right to be free of "cruel and unusual punishment."

■ In regard to cruel and unusual punishment, the Eighth Amendment "places restraints on prison officials ... [and] also imposes duties on these officials...." *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Among the duties imposed on prison officials is the " 'duty ... to protect prisoners from violence at the hands of other prisoners.' " *Farmer,* 511 U.S. at 833, 114 S.Ct. 1970 (quoting *Cortes–Quinones v. Jimenez–Nettleship,* 842 F.2d 556, 558 (1st Cir.1988), *cert. denied,* 488 U.S. 823, 109 S.Ct. 68, 102 L.Ed.2d 45 (1988)). However, "not ... every injury suffered by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834, 114 S.Ct. 1970. Instead, "[a] prisoner injured while in custody may recover for violation of his Eighth Amendment rights if the injury resulted from the defendant prison official's purposeful subjection of the prisoner to a 'substantial risk of serious harm' or from the official's deliberate indifference to that risk." *Fischl v. Armitage,* 128 F.3d 50, 55 (2d Cir.1997) (quoting *Farmer,* 511 U.S. at 834, 114 S.Ct. 1970).

■ As the Second Circuit has noted, "[t]he test for deliberate indifference is twofold." *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.

1996). This twofold test has both an objective and subjective component. A plaintiff alleging deliberate indifference must establish that "he is [objectively] incarcerated under conditions posing a substantial risk of serious harm ... [and] that the defendant prison officials [subjectively] possessed sufficient culpable intent." *Hayes*, 84 F.3d at 620 (citing *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970).[3] Sufficient culpable intent may be satisfied under a two-tiered inquiry, which asks whether the defendant prison official "ha[d] knowledge that an inmate face[d] a substantial risk of serious harm and ... [the official] disregard[ed] that risk by failing to take reasonable measures to abate the harm." *Hayes*, 84 F.3d at 620.

▮ Assuming for the purposes of this motion that plaintiff's allegations are true, the court finds that the current record does not present an issue of material fact to establish a viable Title VII claim for deliberate indifference. Specifically, plaintiff does not aver facts that could lead a reasonable jury to conclude that Officer Walker had knowledge of the risk of substantial harm to plaintiff. In support of his motion for summary judgment, Walker has submitted affidavits supporting his contention that he lacked knowledge of the first altercation between Mendez and Velez. Item 31, ¶ 10. Walker also contends that he was neither acquainted with inmates Mendez or Velez prior to the incident on December 2, 1995, nor knew of the previous altercation between them. Item 31, pp. 10–11.

Plaintiff fails to offer evidence which contravenes these contentions. Mendez claims that on January 5, 1996, Lieutenant

R.D. Coffey, who was a Sergeant at Attica during the relevant time period, interviewed him in regard to the fight on December 2, 1995. According to plaintiff, Lieutenant Coffey conveyed to him during this interview that it is the "duty ... of all [corrections employees] to learn all ... that occurred in [previous] days ... in your area of work." Item 53. It appears to the court that at this interview, Lieutenant Coffey answered affirmatively to Mendez when asked whether this duty included reviewing reports of previous days' events in one's area of patrol. Item 53, p. 4. The plaintiff has submitted a copy of the "C" block logbook, which clearly indicates that there was a fight between Velez and Mendez on November 29, 1995. *See* Item 75, p. 61. Further, plaintiff alleges that Lieutenant Coffey acknowledged that it "was not normal" to allow prisoners in a maximum security prison to be let out of their cells at the same time after they had recently been in a fight. Item 53, p. 3. This evidence, taken together, may tend to suggest that Walker had the necessary materials and resources at his disposal to be aware of the risk that these two inmates would engage in another altercation if they were placed in the same cell block and then permitted to commingle unsupervised.

However, in light of the Second Circuit's recent decision in *Rangolan v. County of Nassau*, 217 F.3d 77 (2d Cir.2000), the present record does not support such a finding. In *Rangolan*, the district court dismissed the section 1983 claim of a former inmate at the Nassau County Correctional Center ("NCCC"). The record upon which the district court dismissed the claim revealed that Rangolan had been

---

**3.** For the purposes of defendant's motion for summary judgment, the court notes that the objective component of the deliberate indifference test is sufficiently established. Conditions posing a substantial risk of serious harm certainly include, among other conditions, permitting a prisoner to be exposed to attack by another prisoner with whom the prisoner had fought with only a few days previously. Here, Mendez was housed under keeplock in

the same cell block as Velez, the prisoner with whom he had fought on November 29, 1995. Subsequently, these two inmates were permitted to commingle unsupervised when their cells were opened—an act which directly precipitated their second altercation. At the very least, it is a question of fact as to whether such conditions would objectively pose a substantial risk of harm to a prisoner.

beaten severely by another inmate with which he was housed. Although NCCC's computer system specifically indicated that Rangolan and his assailant were not to be placed together, an NCCC officer mistakenly failed to notice the directions and assigned the assailant to the same dormitory as Rangolan.[4] At trial, Rangolan and his wife alleged, *inter alia,* that the County, in housing the two inmates in the same dormitory, had violated Rangolan's Eighth Amendment rights by acting with deliberate indifference to his safety. However, in upholding the district court's dismissal of Rangolan's section 1983 claim, the Second Circuit noted: "[g]iven the [NCCC officer's] testimony [that he mistakenly failed to notice the order to not house the inmates together] *and the absence of any evidence of substance contradicting it,* a reasonable jury could not find that Rangolan had carried his burden of showing that the County deliberately disregarded his safety." *Rangolan,* 217 F.3d 77 (emphasis added).[5]

The present record is similarly devoid of evidence that could substantiate Mendez's section 1983 claim and contravene Walker's contention that he did not know either inmate or their prior history before letting them out of their cells at the same time is similarly lacking in evidence. In an attempt to undercut Walker's testimony regarding his lack of foreknowledge, Mendez

offers evidence that all corrections officers at Attica are obligated to be aware of the events preceding their shifts, including those events detailed in the previous days' log. Here, the "C" block logbook clearly notes that a fight occurred between the inmates on November 29, 1995. As it is the "duty" of Attica corrections officers to review such records, it is possible that Walker reviewed the "C" logbook and therefore had prior knowledge of the first altercation between the two inmates.

■ However, it is also possible that Walker failed to review the logbook or that he reviewed the log and mistakenly failed to notice the report of the first altercation between Mendez and Velez. The record more accurately reflects this version of events as Walker states, via an uncontested affidavit, that he did not know either inmate or have knowledge of their previous altercation. Without more direct evidence which clearly establishes that Walker knew both inmates or their prior history before he let them out of their cells at the same time, Walker's possible failure to review the logbook or his mistake in failing to notice that the inmates had previously fought is, at best, negligence.[6] As Captain Perkins of Attica readily admitted at Mendez's Tier III hearing, "[a] mistake was made [in the failure of not keeping Mendez and Velez separated]. An over-

4. Rangolan had cooperated with the government in prosecuting his assailant, acting as an informant. The two were to be kept separated, as it was feared that Rangolan's assailant would attempt to retaliate against Rangolan for his cooperation in the prosecution, as he did.

5. Notably, the jury in *Rangolan* held Nassau County liable for the injuries suffered by Rangolan due to the County's negligence in housing the inmates together. A finding of negligence, however, does not support a finding of deliberate indifference. As the Supreme Court has noted, the mental state of a prison official who has allegedly acted with deliberate indifference to an inmate's safety is assessed under a standard of subjective recklessness as used in the criminal law. *See Farmer,* 511 U.S. at 839–40, 114 S.Ct. 1970.

Accordingly, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for condemnation, cannot ... be condemned as the infliction of punishment." Id. at 838, 114 S.Ct. 1970.

6. The deliberate indifference standard clearly requires that an "official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970. Here, without further evidence that Walker was even aware of facts from which to draw the inference—*i.e.,* that Walker knew the inmates prior to the second altercation or knew of their fight—plaintiff has failed to establish a sufficient claim.

sight was made." Item 18, exhibit D, p. 24. However, such mistakes, especially in light of the Second Circuit's holding in *Rangolan*, are more indicative of negligence than of the deliberate indifference standard originally contemplated by the Supreme Court. *See Farmer*, 511 U.S. at 835–40, 114 S.Ct. 1970.

Although the court is inclined to grant summary judgment to Walker on the section 1983 claim based on the present record and the Second Circuit's holding in *Rangolan*, such action will be suspended in light of the leniency afforded pro se litigants. *See infra*, p. 212. Presently, the record is replete with incomplete and unclear affidavits and submissions by Mendez. Many of these affidavits and submissions are in Spanish or in both Spanish and English, making it difficult for the court to discern plaintiff's full allegations. As such, the court deems that appointment of counsel may substantially benefit Mendez's claim if, after further discovery, facts may be averred to substantiate a colorable section 1983 claim for deliberate indifference.[7] However, if further discovery reveals that no other evidence exists in the record to buttress Mendez's claim that Walker knew both inmates and their combative history prior to the second altercation and that he acted with deliberate indifference towards Mendez's safety, then summary judgment will be properly ordered.

### B. Defendant's Claim of Qualified Immunity

As the plaintiff has failed to state a colorable claim under 42 U.S.C. § 1983, the court need not address defendant's assertion of qualified immunity. Again, if further discovery reveals that plaintiff may establish a claim for deprivation of his Eighth Amendment rights, then the issue of defendant's claim of qualified immunity will be considered.

### C. Defendant's Motion to Dismiss for Failure to Follow Orders of the Court

 Finally, defendant requests that this court enter an order dismissing plaintiff's complaint for failure to follow an order of the court. Item 71, p. 3. Specifically, defendant asks this court to dismiss the complaint because plaintiff failed to follow this court's July 21, 1998 and June 11, 1999 orders requiring the plaintiff to submit documents to the court in English.[8] Fed.R.Civ.P. 41(b) permits courts to dismiss an action "[f]or failure of the plaintiff to prosecute or to comply with … any order of the court." However, Rule 41(b) dismissals are a "harsh remedy" that are "appropriate only in extreme situations." *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996); *Jackson v. City of New York*, 22 F.3d 71, 75 (2d Cir.1994). District courts "should be especially hesitant to dismiss for procedural deficiencies where … the failure is by a pro se litigant." *Lucas*, 84 F.3d at 532.

 The motion is denied. Dismissal is obviously an extreme and harsh remedy. Further, no warning was given to plaintiff that failure to comply could result in dismissal of his claim. While court orders should be obeyed, dismissal of the action under these circumstances is too harsh a remedy. Because the court intends to as-

---

7. Evidence which may strengthen Mendez's claim could include, but need not be limited to, deposition testimony that corroborates his hearsay contention that Velez and Walker were indeed "friends" prior to the second altercation. *See infra*, p. 1, n. 1. Likewise, further discovery may reveal that Walker looked at the "C" logbook, acknowledged that the inmates had previously fought, and decided to open the inmates' cells even after obtaining such knowledge.

8. After the court's July 21, 1998 order requiring the plaintiff to submit documents in English, the court issued an order on June 11, 1999 (Item 67) requiring the plaintiff to resubmit, in English, interrogatories which he originally submitted to the court in Spanish on April 4, 1997. Item 16. At present, plaintiff has not complied with this order.

sign counsel, it is expected that these troubling problems will be avoided in the future.

### *CONCLUSION*

Although, based on the record, the court is inclined to grant summary judgment to defendant, such motion is not granted, as plaintiff is a pro se litigant and further discovery is necessary. For reasons stated herein, defendant's motion to dismiss is denied. The court will assign an attorney for plaintiff, for it is evident that there are many issues of law and fact to be resolved, and the aid of an attorney may be helpful to plaintiff.

Therefore, Nelson S. Torre, Esq., 1220 Liberty Building, Buffalo, New York 14202, shall be assigned to represent plaintiff. The file shall be available for Mr. Torre's inspection in chambers. Mr. Torre shall inform the Clerk as to which items in the file he wishes to have copied, and the Clerk is directed to make such copies. Counsel shall then meet with counsel for both parties on Monday, October 2, 2000, at 3 p.m. to set a discovery schedule.

The court notes that Mr. Torre is fluent in Spanish. Therefore, plaintiff may conveniently communicate with him. However, Mr. Torre is not obligated to accept telephone calls from plaintiff. It appears to the court that written communications with counsel may suffice.

So ordered.